1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   KATHERINE A. HIGGINS, SB# 220198
2    E-Mail: Katherine.Higgins@lewisbrisbois.com
   NICOLE L. JONES, SB# 247152
3    E-Mail: Nicole.Jones@lewisbrisbois.com
   333 Bush Street, Suite 1100
4  San Francisco, California 94104-2872
   Telephone: 415.362.2580
5  Facsimile:  415.434.0882

6  Attorneys for Defendant CLOVER-
   STORNETTA FARMS, INC.
7

8                    UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

| | |
|---|---|
| 11  AMY   GITSON   and   DEBORAH   ROSS, individually and on behalf of others similarly situated, | CASE NO.  C 13-1517 EDL |
| 12 | **DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 13  Plaintiffs, | |
| 14  vs. | |
| 15  CLOVER-STORNETTA FARMS, INC., | Action Filed: April 4, 2013 Trial Date:    February 17, 2015 |
| 16  Defendant. | **Date:       September 17, 2013 Time:        2:00 p.m. Courtroom:  E: Hon. Elizabeth D. Laporte** |
| 17 | |

18                **<u>NOTICE OF MOTION AND MOTION</u>**

19  TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

20      **PLEASE TAKE NOTICE THAT** on **September 17, 2013, at 2:00 p.m.**, or as soon thereafter

21  as this may be heard in the above-referenced court, before the Honorable Elizabeth D. Laporte,

22  Defendant CLOVER-STORNETTA FARMS, INC. ("Clover") will and hereby does move the court

23  for an order dismissing the complaint ("complaint") and each claim therein filed by the plaintiffs

24  AMY GITSON and DEBORAH ROSS ("plaintiffs").

25      This motion is made pursuant to Federal Rules of Civil Procedure 8, 12(b)(1) and 12(b)(6), and

26  is based on the following grounds:

27      1.    It is not plausible that a reasonable consumer would be deceived by the alleged product

28  labeling and therefore the complaint has not adequately alleged reliance, causation, and injury as

4847-7301-8645.2                                                        1                                    C-13-1517-EDL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 || required to state a claim under Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL").

2 ||     2.    It is not plausible that the plaintiffs were deceived by the alleged product labeling, and
3 || therefore the complaint has not adequately alleged reliance, causation, and injury as required for
4 || plaintiffs to have standing, or to state a claim, under the UCL.  The plaintiffs also lack standing to
5 || assert claims based on products they never purchased and statements they never read.

6 ||     3.    Because their claims are not supported by plausible allegations of deception (and in
7 || fact affirmatively demonstrate that there was no deception), the plaintiffs must rest their case entirely
8 || on alleged technical violations of provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.
9 || §§ 301 et seq. ("FDCA") that have been incorporated into California's Sherman Food, Drug and
10 || Cosmetic Law, Cal. Health & Safety Code §§ 109875 et seq. ("Sherman Law").  However, the
11 || plaintiffs have no private right of action to enforce compliance of the FDCA, or the Sherman Law -
12 || and even if they could bring such claims, the plaintiffs' own allegations show that there has been no
13 || regulatory violation and, in any event, violation of a labeling regulation is not synonymous with false
14 || advertising.

15 ||     4.    The plaintiffs' state law claims are impliedly and expressly preempted by uniform
16 || federal labeling law promulgated by Congress and the FDA, or at a minimum would require the court
17 || to adjudicate issues (including the interpretation of FDA regulations) that should be left to the FDA
18 || under the primary jurisdiction doctrine.

19 ||     5.    The plaintiffs' unjust enrichment claims fail because unjust enrichment is not an
20 || independent cause of action in California.

21 || ///
22 || ///
23 || ///
24 || ///
25 || ///
26 || ///
27 || ///
28 || ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-7301-8645.2          2          C-13-1517-EDL
DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1        This motion is based on this notice of motion, the accompanying statement of issues to be decided,

2   the accompanying memorandum of points and authorities, all pleadings and documents on file in this case,

3   and on such other written and oral argument as may be presented to the court.

4   DATED: August 5, 2013              LEWIS BRISBOIS BISGAARD & SMITH LLP

5

6                 By:       /s/ Katherine A. Higgins

7                        Katherine A. Higgins
                     Nicole L. Jones

8                        Attorneys for Defendant CLOVER- STORNETTA
                     FARMS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF CONTENTS

Page

I.    INTRODUCTION..................................................................................................... 1

The "Only Natural Ingredients" Claim.................................................................. 1

II.   THE ALLEGATIONS OF THE COMPLAINT ..................................................... 2

A.    The Clover Products At Issue.................................................................... 3

B.    Plaintiffs' False Advertising Theories And Their Product Purchases ...................... 3

C.    The Complaint's Remaining Allegations Argue Technical Regulatory
      Violations .................................................................................................. 4

III.  LEGAL STANDARD FOR MOTION TO DISMISS ........................................... 4

IV.   THE COMPLAINT DOES NOT ALLEGE A PLAUSIBLE FALSE
      ADVERTISING CLAIM ....................................................................................... 5

A.    The Law Requires Plausible Allegations That A "Reasonable Consumer" Is
      Likely To Be Deceived By The Challenged Advertising ......................... 6

B.    A Reasonable Consumer Would Not Be Deceived By The Challenged
      Statements ................................................................................................. 7

      1.    The Natural Claim ........................................................................ 8

C.    Plaintiffs Lack Standing To Bring Their Claims ..................................... 9

      1.    It Is Not Plausible That Plaintiffs Reasonably And Actually Relied
            On The Challenged Statements, Or Suffered Injury ..................... 9

      2.    Plaintiffs May Not Pursue Claims Based on Statements They Did
            Not See and Products They Did Not Purchase............................. 11

D.    Clover Does Not Violate The Labeling Regulations ............................. 12

      1.    Clover Does Not Violate the Standard of Identity for Yogurt ................... 12

      2.    Clover's Disclosure of Evaporated Cane Juice Is Not Unlawful................ 13

V.    PLAINTIFFS' CLAIMS ARE PREEMPTED, AND FALL UNDER THE
      PRIMARY JURISDICTION OF THE FDA........................................................ 14

A.    Plaintiffs' State Law Claims Are Impliedly Preempted (21 U.S.C. § 337)............. 14

B.    Plaintiffs' State Law Claims Are Expressly Preempted (21 U.S.C. § 343-1) ......... 18

C.    The Complaint Should Be Dismissed Under The Primary Jurisdiction
      Doctrine................................................................................................... 19

VI.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL................................. 20

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

      A.     Plaintiffs' Unjust Enrichment Claim Should Be Dismissed ..................................... 20

2   VII.  THESE ALLEGATIONS HAVE BEEN ADDRESSED BY OTHER DISTRICTS
          COURTS IN THE NINTH CIRCUIT, WHERE THEY HAVE FAILED ......................... 20

3

   VIII.  LEAVE TO AMEND SHOULD NOT BE GRANTED ...................................................... 20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**TABLE OF AUTHORITIES**

2

Cases

3 *Animal Legal Defense Fund v. Provimi Veal Corp.,*

4     626 F.Supp.278, 283 (D.Mass.1986) ................................................................. 15

5 *Ashcroft v. Iqbal*

6     556 U.S. 662, 678 (2009) ............................................................................. 5, 6

7 *Bell Atl. Corp. v. Twombly*

8     550 U.S. 544, 555 (2007) ................................................................................ 5

9 *Birdsong v. Apple, Inc.,*

10     590 F.3d 955, 961 (9th Cir. 2009) ................................................................. 10

11 *Braintree Labs., Inc. v. Nephro-Tech, Inc.,*

12     1997 WL 94237, at *7 (D. Kan. Feb. 26, 1997) ............................................... 16

13 *Buckland v. Threshold Enters., Ltd.*

14     155 Cal.App.4th 798 (2007) ........................................................................... 6

15 *Carrea v. Dreyer's Grand Ice Cream,*

16     2011 WL 159380 (N.D. Cal. Jan. 10, 2011), aff'd 475 Fed. App'x 113 (9th Cir. 2012 .. 6, 11

17 *City of Arcadia v. U.S. Envtl, Prot. Agency*

18     411 F.3d 1103, 1106 n3 (9th Cir. 2005) ............................................................ 4

19 *Clark v. Time Warner Cable,*

20     523 F.3d 1110, 1115 (9th Cir. 2008) ......................................................... 19, 20

21 *Colgan v. Leatherman Tool Group, Inc*

22     135 Cal.App.4th 663, 682 (2006) .................................................................... 7

23 *Conboy v. AT&T Universal Card Servs. Corp.,*

24     84 F.Supp.2d 492 (S.D.N.Y. 2000) .................................................................. 6

25 *Crosby v. National Foreign Trade Council,*

26     530 U.S. 363, 372 (2000) ............................................................................. 14

27 *Delacruz v. Cytosport, Inc.,*

28     2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012) ................................... 7, 12

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Dvora v. Gen. Mills, Inc.*,
    2011 WL 1897349, *8 (C.D. Cal. May 16, 2011)............................................................. 11

*English v. Gen. Elec. Co.*,
    496 U.S. 72, 78-79 (1990)....................................................................................... 15

*Estee Lauder, Inc. v. FDA*,
    727 F.Supp.1, 5 (D.D.C. 1989)............................................................................... 14

*Ethex Corp. v. First Horizon Pharm. Corp.*,
    228 F.Supp.2d 1048, 1055 (E.D. Mo., 2002) ...................................................... 16

*Fayer v. Vaughn*
    649 F.3d 1061, 1064 (9th Cir. 2011)....................................................................... 5

*Fid. Fed. Say. & Loan Ass 'n v. de la Cuesta*,
    458 U.S. 141, 153 (1982) ........................................................................................ 18

*Fraker v. KFC Corp.*,
    2007 WL 1296571, at *4 (S.D. Cal. Apr. 30, 2007) ............................................ 19

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785, 814-815 (N.D. Cal. 2011) .................................................. 20

*Freightliner Corp. v. Myrick*,
    514 U.S. 280, 288 (1995) ........................................................................................ 15

*Freeman v. Time, Inc*
    68 F.3d 285 (9th Cir. 1995)...................................................................................... 6

*Frye v. L 'Oreal USA, Inc.*,
    583 F.Supp.2d 954, 958 (N.D. Ill. 2008) .............................................................. 10

*Geier v. Am. Honda Motor Co., Inc.*,
    529 U.S. 861, 869 (2000) ........................................................................................ 15

*Genendo Pharmaceutical NV. v. Thompson*,
    308 F.Supp.2d 881, 885 (N.D. Ill. 2003) .............................................................. 14

*Gomez v. Wells Fargo Bank*,
    676 F.3d 655, 661-62 (8th Cir. 2012................................................................... 10

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Gordon v. Church & Dwight Co.*,
    2010 WL 1341184 (N.D. Cal. April 2, 2010) ...................................................................... 19

*Herrington v. Johnson & Johnson Consumer Cos.*,
    2010 WL 3448531, at * 1-14 (N.D. Cal. Sept. 1, 2010) .................................................... 11

*Hill v. Roll Intl Corp*
    195 Cal.App.4th 1295 (2011) .......................................................................................... 6, 7

*In re Farm Raised Salmon Cases*,
    42 Cal 4th 1077 (2008), .................................................................................................. 17

*In re Ferrero Litig*
    794 F.Supp.2d 1107 (S.D. Cal. 2011) ........................................................................... 6, 11

*In re Fruit Juice Products Marketing and Sales Practices Litigation*
    831 F. Supp. 2d 507, 512 (D. Mass. 2011) ...................................................................... 10

*In re iPhone Application Litigation*,
    844 F.Supp.2d 1040, 1075-76 (N.D. Cal. 2012) .............................................................. 20

*In re Metro. Secs. Litig*
    532 F.Supp.2d 1260, 1279-80 (E.D. Wa. 2007) ................................................................ 6

*In re PetSmart, Inc. Secs. Litig*
    61 F.Supp.2d 982, 991 (D. Ariz. 1999) ............................................................................. 6

*Johns v. Bayer Corp.*,
    2010 WL 476688, at *4-5 (S.D. Cal. Feb. 9, 2010) ......................................................... 11

*Kwikset Corp. v. Superior Cour*
    (2011) 51 Cal.4th 310, 326-27 ...................................................................................... 9, 10

*Lavie v. Procter & Gamble Co.*,
    105 Cal.App.4th 496, 508 (2003) ....................................................................................... 7

*Loreto v. The Procter & Gamble Co.*,
    737 F. Supp. 2d 909, 921-22 (S.D. Ohio 2010) ............................................................... 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 560-61 (1992) .............................................................................................. 9

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  *Mason v. Coca-Cola Co.*,

2      774 F.Supp.2d 699 (D.N.J. 2011) .............................................................. 7, 9, 12

3  *Mathison v. Bumbo*,

4      2008 WL 8797937, *3 (C.D. Cal. Aug. 18, 2008) ................................................ 6

5  *McKinnis v. Kellogg USA*,

6      2007 WL 4766060, at *4 (C.D. Cal., Sept. 19, 2007) ......................................... 8

7  *McKinniss v. Gen. Mills, Inc*

8      No. 07-2521, 2007 WL 4762172, at *3-5 (C.D. Cal. Sept. 18, 2007) ................... 5

9  *McKinniss v. Sunny Delight Beverages Co.*

10      No. 07-2034, 2007 WL 4766525, at *4-5 (C.D. Cal. Sept. 4, 2007) .................... 5

11  *Medtronic, Inc. v. Lohr*,

12      518 U.S. 470, 485 (1996) ................................................................................. 15

13  *Meyer v. Sprint Spectrum L.P*

14      (2009) 45 Cal.4th 634, 641 ................................................................................. 9

15  *Myers-Armstrong v. Actavis Totowa, LLC*,

16      2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009) .......................................... 11

17  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,

18      85 N.Y.2d 20 (1995) .......................................................................................... 6

19  *Porn Wonderful LLC v. Coca Cola Co.*,

20      679 F.3d 1170, 1175-76 (9th Cir. 2012) ...................................................... 15, 16

21  *Prof'ls & Patients for Customized Care v. Shalala*,

22      847 F.Supp.1359, 1365 (S.D. Tex. 1994) .......................................................... 13

23  *Rivera v. Wyeth-Ayerst Labs.*,

24      283 F.3d 315, 319-21 (5th Cir. 2002) ............................................................... 10

25  *Rosen v. Unilever*,

26      2010 WL 4807100 (N.D. Cal. May 3, 2010 .......................................................... 6

27  *Sanchez-Llamas v. Oregon*,

28      548 U.S. 331, 354 (2006) ................................................................................. 17

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*,

2      547 F.Supp.2d 939, 946 (E.D. Wis. 2008) ........................................................ 13

3  *SEC v. Reyes*,

4      491 F.Supp.2d 906, 912 n.6 (N.D. Cal 2007 ...................................................... 11

5  *Starr v. Baca*

6      652 F.3d 1202 (9th Cir. 2011).............................................................................. 6

7  *Sugawara v. Pepsico, Inc*

8      No. 08-1335, 2009 WL 1439115, at *2-4 (E.D. Cal. May 21, 2009) ..................... 5

9  *Turek v. General Mills, Inc.*,

10      662 F.3d 423, 426 (7th Cir. 2011) (Posner, I.) .................................................. 18

11  *United States v. Gen. Dynamics Corp.*,

12      828 F.2d 1356, 1363 (9th Cir. 1987)................................................................... 20

13  *United States v. W. Pac. R.R.*,

14      352 U.S. 59, 64 (1956) ....................................................................................... 20

15  *Videtto v. Kellogg USA*

16      No. 08-1324, 2009 WL 1439086, at *2-3 (E.D. Cal. May 21, 2009) ..................... 5

17  *Weaver v. Chrysler Corp.*,

18      172 F.R.D. 96, 99 (S.D.N.Y. 1997).................................................................... 10

19  *Werbel v. Pepsico, Inc.*,

20      2010 WL 2673860 (N.D. Cal. July 2, 2010) ........................................................ 6

21  *Williams v. Gerber Prods. Co.*

22      552 F.3d 934 (9th Cir. 2008)............................................................................... 6

23  *Williams v. Purdue Pharma Co.*,

24      297 F. Supp. 2d 171, 176-78 (D.D.C. 2003) ...................................................... 10

25  *Williams v. Taylor*,

26      529 U.S. 362, 378-379, 384 (2000).................................................................... 17

27  *Williamson v. Reinalt-Thomas Corp.*

28      2012 WL 1438812, *9 (N.D. Cal April 25, 2012) ..................... 2, 5, 6, 8, 9, 20, 21

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 | *Zwart v. Hewlett-Packard Co.,*

2 |    2011 WL 767750, at \*3-4 (N.D. Cal., Feb. 25, 2011) ........................................................ 12

3 |

4 | **STATUTES**

5 | 21 C.F.R. §§ 1.1, et seq. ................................................................................................... 14

6 | 21 C.F.R. §§ 70.3(f), 101.22(a)(4), (c) ........................................................................... 18

7 | 21 C.F.R. 102.5(d) ............................................................................................................ 14

8 |
9 | 21 C.F.R. § 131.200 .......................................................................................................... 12

10 | 21 C.F.R. § 131.200(d)(2) ................................................................................................ 12

11 | 21 C.F.R. §§ 131.203 ........................................................................................................ 12

12 | 21 U.S.C. § 301, et seq. ..................................................................................................... 14

13 | 21 U.S.C. § 337 ................................................................................................................. 14

14 | 21 U.S.C. § 341 ................................................................................................................. 14

15 | 21 U.S.C. § 343-1 .............................................................................................................. 15

16 | 74 F.R. 2443, 2455 {Jan. 15, 2009) ................................................................................. 12

17 | 74 F.R. 2443, 2447 (Jan. 15, 2009) ................................................................................. 20

18 | 74 F.R. 2443, 2456 (Jan. 15, 2009) ................................................................................. 19

19 | FDA Compliance Guide CPG § 550.475 ......................................................................... 12

20 | Federal Rule of Civil Procedure 12(b)(6) .......................................................................... 4

21 | Regulations

22 | FDA Regulatory Procedures Manual, Section 4-1¬1 ........................................................ 13

23 |
24 |
25 |
26 |
27 |
28 |


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1        **STATEMENT OF ISSUES TO BE DECIDED**

2    1.    Is it plausible that a reasonable consumer would be deceived by the product labeling?

3    2.    Is it plausible that the plaintiffs were deceived by the alleged product labeling?

4    3.    Does the complaint contain plausible allegations of reliance, causation, and injury, as required

5    for plaintiffs to have standing and state a claim under the UCL?

6    4.    May the plaintiffs bring this case to enforce alleged technical violations of provisions of the

7    FDCA or Sherman Law?   In any event, does the complaint contain plausible allegations of such

8    violations?

9    5.    Are the plaintiffs' state law claims impliedly preempted by 21 U.S.C. § 337?

10   6.    Are the plaintiffs' state law claims expressly preempted by 21 U.S.C. § 343-1?

11   7.    Do the plaintiffs' claims require the court to adjudicate issues that fall under the primary

12   jurisdiction doctrine of the FDA?

13   8.    May the plaintiffs assert claims based on products they never purchased and statements they

14   never read?

15   9.    May the plaintiffs pursue a claim for unjust enrichment?

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case is one of more than 25 false advertising consumer class actions against the food and beverage industry filed recently in this district by plaintiffs' counsel. Each complaint follows the same formula: allege a technical violation of the FDCA and assert state law claims under the Sherman Law and UCL based on the alleged FDCA violation. In structuring their complaints in this manner, the plaintiffs and their counsel appear to attempt to circumvent the prohibition against private individuals enforcing alleged violations of the FDCA. In spite of the efforts to blur or confuse the issues between their false advertising claims and the alleged FDCA violations, numerous legal principles such as the reasonable consumer standard, standing, implied and express preemption, and primary jurisdiction defeat the action.

Most fundamentally, the complaint fails to allege any kind of plausible deception and, in fact, affirmatively demonstrates that no deception occurred (either for the reasonable consumer or the plaintiffs themselves). The extensive citations to the FDA regulations and policy do not cure the defect, and the complaint should be dismissed on this ground alone.

### The "Only Natural Ingredients" Claim

The plaintiffs base their claims in part on the labeling statement, "all natural." (Complaint at ¶¶ 59-69.) The plaintiffs never allege, however, that a single specific ingredient in Clover's products is unnatural. Instead, the plaintiffs rely on the notion that the FDA prohibits the use of the term "natural color" where an ingredient is used to color the product, even if, as is the case here, the ingredient is natural. (Complaint at ¶ 63.). However, this point is irrelevant because Clover does not say "natural color," and the FDA does not address, let alone prohibit, the statement "only natural ingredients." Moreover, neither plaintiff purchased a yogurt containing ingredients used "for color" – these products were in the Natural Dairy line that the plaintiffs concede they did not purchase. (Complaint at ¶¶ 63, 79.)

More importantly, neither plaintiffs nor the reasonable consumer could have been deceived into thinking that Clover product contains no ingredient "for color." First, no reasonable consumer could — as is required for plaintiffs' theory — interpret the statement, "Only Natural Ingredients" to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    mean, "No Natural Ingredients Added For Color." Second, the ingredient list on Clover's label (which

2    the plaintiffs allege they read) expressly discloses the product contains elderberry juice and beet juice

3    concentrate "(for color)." This disclosure alone negates the plaintiffs' natural claim.

4                                    **The "Evaporated Cane Juice" Claim**

5           The plaintiffs allege that they believed Clover's products did not contain "sugar or dried cane

6    syrup." (Complaint at ¶ 80.) However, Clover does not label its products as containing sugars only

7    from fruit and milk or as containing no added sugars or syrups, and there is nothing on the product

8    labels that would likely lead a reasonable consumer to that conclusion (e.g., "Only Natural

9    Ingredients" does not mean "Natural Sugars Only from Milk and Fruit"). Clover in no way misleads

10   consumers by including wording or any labeling whatsoever that states the products do not contain

11   sugars. Compounding the plaintiffs' problem, they do not allege that the labeling statements Clover

12   does make concerning sugars and sweeteners are inaccurate in any way. (Complaint at ¶ 7 (Nutrition

13   Facts Panel showing "Sugars 24g".)

14          Moreover, the plaintiffs cannot plausibly claim that they were unaware that "evaporated cane

15   juice" is a sweetener. To any reasonable consumer (and especially a consumer with the apparent

16   concerns over the source of sugars these plaintiffs allegedly had), the word "cane" in the ingredient list

17   indicates a sweetener ingredient. This is particularly true for plaintiffs who allege that they knew

18   "dried cane syrup" was a sweetener ingredient, and thus, would not have purchased the yogurt had

19   they known it was included (Complaint at ¶ 80) and, therefore, cannot plead ignorance about

20   evaporated cane juice.

21          In short, the plaintiffs' interpretation of the labels is not plausible, and would not have been

22   reached by a "significant portion of the general consuming public." (*See Williamson v. Reinalt-*

23   *Thomas Corp.*, 2012 WL 1438812, *9 (N.D. Cal April 25, 2012). Based on this incurable defect,

24   along with the independent grounds detailed below, the complaint should be dismissed with prejudice.

25   **II.     THE ALLEGATIONS OF THE COMPLAINT**

26          The complaint contains a variety of regulatory arguments, broad and vague factual allegations,

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  and irrelevant material, making it unnecessarily difficult to figure out what the plaintiffs are alleging.[1]

2  Once untangled, however, it is clear that the plaintiffs have no plausible case at all.

3  ### A.     The Clover Products At Issue

4  The plaintiffs allege they purchased a total of two different Clover Yogurt flavors (Complaint

5  at ¶ 79), and while there are references to thirteen other yogurts, there are no allegations that any of

6  those were purchased by the plaintiffs (Complaint at ¶ 2.)

7  The complaint includes two images of the product label for Clover's Forest Berry Cream on

8  Top yogurt and two images of the Organic Vanilla Bean yogurt: the front (Complaint at ¶¶ 7, 68), and

9  the Nutrition Facts Panel and list of ingredients (Complaint at ¶¶ 7, 68).  Clover's Forest Berry Cream

10 yogurt contains the following ingredients: organic pasteurized milk, organic pasteurized cream,

11 organic raspberries, organic strawberries, organic blueberries, organic evaporated cane juice, pectin,

12 organic corn starch, natural flavor, and live active cultures.  (Complaint at ¶ 7.)  The Vanilla Bean

13 yogurt contains certified organic lowfat pasteurized milk, organic evaporated cane juice, pectin,

14 organic vanilla flavor, and cultures.  (Complaint at ¶ 68.)  The Nutrition Facts Panels provide required

15 nutrition information, including that the products have "24g" and "18g" of "Sugars," respectively

16 (Complaint at ¶¶ 7, 68.)

17 ### B.     Plaintiffs' False Advertising Theories And Their Product Purchases

18 The plaintiffs provide no dates for when they "read" the product labels or visited Clover's

19 website.  They allege they purchased yogurt "during the class period, but provide no specific dates and

20 do not allege how often they purchased the yogurt.  (Complaint at ¶ 79.)  In any event, the plaintiffs

21 clearly concede they read the labels on Clover's products, including the list of ingredients (id.) and that

22 based on those representations they purchased Clover products.  (Complaint at ¶¶ 80-81.)

23 The plaintiffs allege that they believed the products were natural, and would not have

24 purchased them if they believed they contained sugar or dried cane syrup.  (Complaint at ¶ 80.)  The

25 plaintiffs do not point to any labeling statements making that claim and do not identify what on the

26

27 [1] The plaintiffs do not allege (and could not allege) that Clover's evaporated cane juice ingredient is unnatural, and, in fact, never allege precisely what they thought "evaporated cane juice" refers to.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1 labels led them to this alleged belief.  The plaintiffs also allege that they believed the products

2 "contained only natural ingredients."

3 　　　　Plaintiffs allege a convenient, single sentence regarding the impact on their purchasing

4 decisions: "Had Plaintiffs known this information [that Defendant's products were mislabeled]

5 Plaintiffs would not have purchased the products." (Complaint at ¶ 84.)

6 　　　　**C.**　　　**The Complaint's Remaining Allegations Argue Technical Regulatory Violations**

7 　　　　The rest of the complaint reads as if the plaintiffs are stepping into the shoes of the FDA in an

8 enforcement action, rather than alleging consumer claims for false advertising.  In particular, the

9 plaintiffs challenge products they never purchased (Complaint at ¶¶ 2, 79), statements they did not

10 rely upon and a handful of alleged violations of regulations, policy, and guidance that have little to do

11 with false advertising claims.

12 　　　　The plaintiffs do not (and cannot) allege that the alleged regulatory violations themselves

13 misled them into buying Clover's products or that such violations caused them any injury. This is not

14 surprising.  The various FDA regulations and other materials may be known to food lawyers, but

15 certainly not to consumers, and violations of regulations do not otherwise support the elements of

16 false advertising (e.g., materiality, reliance, injury).

17 　　　　The plaintiffs assert seven causes of action (Complaint at ¶¶ 100-59), and seek to represent a

18 nationwide class of consumers[2], or in the alternative, a California class of consumers.

19 **III.**　　**LEGAL STANDARD FOR MOTION TO DISMISS**

20 　　　　Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where a plaintiff's

21 complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. (*See,*

22 *e.g., City of Arcadia v. U.S. Envtl, Prot. Agency*, 411 F.3d 1103, 1106 n3 (9th Cir. 2005).)  Although

23 factual allegations are accepted as true, courts "do not 'assume the truth of legal conclusions merely

24 because they are cast in the form of factual allegations.'" (*Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th

25

26
27 [2] The plaintiffs' alleged nationwide class clearly runs afoul of *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) (vacating order certifying a nationwide class alleging false advertising under the UCL, FAL and CLRA).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-7301-8645.2 　　　　　　　　　　　　　4　　　　　　　　　　C-13-1517-EDL
DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1   Cir. 2011) (citation omitted).)

2       Under the Supreme Court's heightened plausibility standard for pleading, a complaint must

3   contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of

4   action" to survive dismissal. (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

5   *Twombly*, 550 U.S. 544, 555 (2007)).) The complaint must allege sufficient facts to "state a claim to

6   relief that is plausible on its face." (*Id.*) "The plausibility standard . . . asks for more than a sheer

7   possibility that a defendant has acted unlawfully." (*Id.*)

8       Federal courts in the Ninth Circuit routinely dismiss false advertising claims on a Rule 12(b)

9   motion. (*See, e.g., Videtto v. Kellogg USA*, No. 08-1324, 2009 WL 1439086, at *2-3 (E.D. Cal. May

10  21, 2009) (dismissing lawsuit alleging that images of fruits on fruit-flavored cereal misleadingly

11  suggested that the cereal contained real fruit); *Sugawara v. Pepsico, Inc.*, No. 08-1335, 2009 WL

12  1439115, at *2-4 (E.D. Cal. May 21, 2009) (dismissing UCL, FAL, and CLRA claims challenging

13  representations and images on Cap'n Crunch packaging as unlikely to deceive a reasonable consumer);

14  *McKinniss v. Gen. Mills, Inc.*, No. 07-2521, 2007 WL 4762172, at *3-5 (C.D. Cal. Sept. 18, 2007)

15  (dismissing complaint alleging cereal box and yogurt packaging misleadingly depicted fruit images

16  because those images merely "indicate [d] that product's 'characterizing flavor"); *McKinniss v. Sunny*

17  *Delight Beverages Co.*, No. 07-2034, 2007 WL 4766525, at *4-5 (C.D. Cal. Sept. 4, 2007)

18  ("[D]epictions of various fruit on Defendant's product labels are simply not deceptive as a matter of

19  law" because a reasonable consumer understands that SunnyD is merely a fruit-flavored drink and a

20  reasonable "consumer can readily and accurately determine the composition and nutritional value of a

21  product.").)

22  **IV.    THE COMPLAINT DOES NOT ALLEGE A PLAUSIBLE FALSE ADVERTISING**
23          **CLAIM**

24      This motion tests the legal sufficiency of the plaintiffs' claims. (*Williamson*, 2012 WL

25  1438812, *2.) The law requires a complaint to plead "enough facts to state a claim to relief that is

26  plausible on its face." (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) A claim is plausible

27  on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable

28  inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal*, 556 U.S. 662,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  678 (2009).)   This analysis provides a critical gatekeeping function, because claims must be

2  sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the

3  expense of discovery and continued litigation." (*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).)

4  Conclusory allegations of law and unwarranted inferences are insufficient. (*Williamson*, 2012 WL

5  1438812, *3.)

6      Here, the plaintiffs' allegations do not state a plausible claim, do not state a claim upon which

7  relief can be granted, and show that plaintiffs lack standing.[3]  Under these circumstances, courts do

8  not hesitate to dismiss claims with prejudice. (*Williamson*, 2012 WL 1438812, *10.)[4]

9      **A.     The Law Requires Plausible Allegations That A "Reasonable Consumer" Is
          Likely    To    Be    Deceived    By    The    Challenged    Advertising**

10

11      The plaintiffs' false advertising claims are governed by the "reasonable consumer" test.

12  (*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Freeman v. Time, Inc.*, 68 F.3d

13  285, 289 (9th Cir. 1995); *Hill*, 195 Cal.App.4th at 1304.)  Under this standard, the plaintiffs must

14  show that "members of the public are likely to be deceived." (*Freeman*, 68 F.3d at 289; *see also In re*

15  *Ferrero Litig.*, 794 F.Supp.2d 1107, 1115 (S.D. Cal. 2011); *Buckland v. Threshold Enters., Ltd.*, 155

16  Cal.App.4th 798, 807-08 (2007); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682

17

18  [3] The complaint employs "puzzle" and "shotgun" pleading styles in violation of Rules 8 and 9(b). (*In*
19  *re Metro. Secs. Litig.*, 532 F.Supp.2d 1260, 1279 (E.D. Wa. 2007) ("Shotgun pleadings are those that
    incorporate every antecedent allegation by reference into each subsequent claim for relief ... [and]
20  puzzle pleadings are those that require the defendant and the court to 'match the statements up with the
    reasons they are false or misleading").) Such pleadings, which typically hurl "a large and varied mass
21  of accusations," are "not countenanced, even under the liberal notice pleading standard of Fed. R. Civ.
    P. 8." (*Mathison v. Bumbo*, 2008 WL 8797937, *3 (C.D. Cal. Aug. 18, 2008); *In re Metro.*, 532
22  F.Supp.2d at 1279-80 (even if factual allegations are very specific, complaint nevertheless violates
    Rules 8 and 9 because it "fails to connect its factual allegations to the elements comprising the
23  Plaintiffs' various claims"); *In re PetSmart, Inc. Secs. Litig.*, 61 F.Supp.2d 982, 991 (D. Ariz. 1999)
    ("the heightened pleading rules are designed to elicit clarity, not volume. The court should not have to
24  play connect-the-dots. . .").)

    [4] See also *Hill v. Roll Intl Corp.*, 195 Cal.App.4th 1295 (2011); *Carrea v. Dreyer's Grand Ice Cream*,
25  2011 WL 159380 (N.D. Cal. Jan. 10, 2011), aff'd 475 Fed. App'x 113 (9th Cir. 2012); *Werbel v.*
    *Pepsico, Inc.*, 2010 WL 2673860 (N.D. Cal. July 2, 2010); *Rosen v. Unilever*, 2010 WL 4807100
26  (N.D. Cal. May 3, 2010); *Videtto v. Kellogg*, 2009 WL 1439086 (E.D. Cal. May 21, 2009); *McKinniss*
    *v. Sunny Delight Beverages Co.*, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007); *Conboy v. AT&T*
27  *Universal Card Servs. Corp.*, 84 F.Supp.2d 492 (S.D.N.Y. 2000); *Oswego Laborers' Local 214*
    *Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20 (1995).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1 | (2006).)

2 |      The likely to be deceived standard requires a probability "that a significant portion of the

3 | general consuming public or of targeted consumers, acting reasonably under the circumstances, could

4 | be misled." (*Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003); *see also Hill*, 195

5 | Cal.App.4th at 1304.) A plaintiff's allegations about being personally deceived by a label are not

6 | legally sufficient to establish a likelihood that a "reasonable consumer" would be deceived. (*Id.* at

7 | 1303-04.) Similarly, the "reasonable consumer" is not the "least sophisticated consumer" or an

8 | "unwary consumer," but rather "the ordinary consumer within the larger population." (*Id.* at 1304

9 | (citing *Lavie*, 105 Cal.App.4th at 505-10).)[5]

10 |      Significantly, plaintiffs may not survive a motion to dismiss merely by alleging technical

11 | regulatory violations. Put another way, an alleged regulatory violation is no substitute for plausible

12 | allegations that reasonable consumers (and Plaintiffs) were deceived. (*See, e.g., Delacruz v.*

13 | *Cytosport, Inc.*, 2012 WL 2563857, at \*10 (N.D. Cal. June 28, 2012) (alleged regulatory violation was

14 | insufficient to support claim for false advertising); *Mason v. Coca-Cola Co.*, 774 F.Supp.2d 699

15 | (D.N.J. 2011) (granting motion to dismiss despite alleged regulatory violation).) As the court in

16 | *Mason* put it: "the complaint is an attempt to capitalize on an apparent and somewhat arcane violation

17 | of FDA food labeling regulations. ***But not every regulatory violation amounts to an act of consumer***

18 | ***fraud. It is simply not plausible that consumers would be aware of FDA regulations regarding***

19 | ***'nutrient content*.'"** (*Id.* at 705 n.4 (emphasis added).)[6] This principle is directly applicable here,

20 | because even assuming arguendo a regulatory violation, a reasonable consumer would not interpret

21 | Clover's label — or be deceived by the label — in the manner alleged by the plaintiffs.

22 |      **B.**    **A Reasonable Consumer Would Not Be Deceived By The Challenged Statements**

23 |      "The key phrases under the reasonable consumer test are 'reasonable consumer' and 'significant

24 |

25 | [5] To the extent plaintiffs are alleging that an "ignorant," "unthinking," and "credulous" consumer standard applies, they are operating under a fundamental error of law. And, of course, whatever the

26 | standard may be for a regulatory enforcement action under the FDCA, plaintiffs in this case must satisfy the reasonable consumer test and allege standing.

27 | [6] See also *Pearson v. Shalala*, 164 F.3d 650, 655 (D.C. Cir. 1999) (failure to obtain FDA approval for a health claim does not mean the claim is "inherently misleading").

28 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-7301-8645.2       7       C-13-1517-EDL
DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1    portion of the general consuming public.'" (*Williamson*, 2012 WL 1438812, *10.) But here, neither

2    reasonable consumers nor a significant portion of the general consuming public would be deceived by

3    the challenged advertising.  In large part, the Complaint fails because consumers do not make

4    purchasing decisions based on, and are not fooled by, the idiosyncratic issues raised by the plaintiffs,

5    i.e., that a natural ingredient has been added for color, or that the product's natural sweeteners come

6    from milk, fruit, and cane.  The reasonable consumer purchases yogurt based on texture, quality, taste

7    and price.  Consumers who want additional nutrition information review the Nutrition Facts Panel.

8    (*See McKinnis v. Kellogg USA*, 2007 WL 4766060, at *4 (C.D. Cal., Sept. 19, 2007) (nutrition

9    information labels "have long been required on food products and are familiar to a reasonable

10    consumer").)

11                  **1.**     **The Natural Claim**

12        The plaintiffs allege that the statement "Only Natural Ingredients" is deceptive for the sole

13    reason that the product contains an ingredient "for color," even though the ingredients (elderberry

14    juice (for color) and beet juice concentrate (for color)), Complaint at ¶ 65) qualifies as "natural" under

15    any reasonable meaning of that word.[7]

16        The plaintiffs allege that when they read "Only Natural Ingredients," they not only formed the

17    belief that the product's ingredients were natural but also that the product did not contain a natural

18    ingredient "for color."  No reasonable consumer (let alone a significant portion of the consuming

19    public) would likely read "Only Natural Ingredients" in that way.

20        First, "Only Natural Ingredients" cannot reasonably be interpreted to mean, "No Natural

21    Ingredients Added For Color," and the plaintiffs never explain how a reasonable consumer would

22    believe that "Only Natural Ingredients" is incompatible with the inclusion of a natural ingredient for

23    color.

24        Second, Clover's label affirmatively discloses to consumers that one of its ingredients is added

25

26    [7] The plaintiffs also refer to "artificial ingredients and flavorings," "synthetic, artificial, or excessively
processed ingredients," "and/or chemical preservatives", but they never identify what they are

27    referring to, and the only discernable natural claim in the Complaint is that the products contain an
ingredient "for color" and/or "for flavor."

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 "for color" and/or "for flavor."  (Complaint at ¶ 65 listing ingredients and at ¶ 68 including vanilla

2 "flavor".)  The reasonable consumer reading "for color" or "for flavor" would know that the product

3 contains an ingredient for color or flavor.

4       Third, the complaint cites FDA regulations and the FDA's Compliance Guide in support of the

5 natural allegations. Setting aside for the moment that Clover's labeling fully complies with the

6 applicable FDA regulations, Plaintiffs do not allege that the reasonable consumer (or a significant

7 portion of consumers) would be aware of the FDA regulations and Compliance Guide cited in the

8 Complaint or would necessarily rely on them in purchasing the products.  This failure alone renders

9 the FDA provisions irrelevant to determining the sufficiency of the false advertising allegations. (*See*

10 *Mason*, 774 F.Supp.2d at 705 n.4.)

11       Accordingly, no reasonable consumer would be deceived by the "Only Natural Ingredients"

12 statement on the product label, and the claim should be dismissed with prejudice.

13       **C.**    **Plaintiffs Lack Standing To Bring Their Claims**

14       Turning from an analysis of the reasonable consumer to plaintiffs specifically, they lack

15 standing under Article III of the United States Constitution and the UCL, FAL, and CLRA to bring

16 their claims.  To allege Article III standing, a plaintiff must plead (1) "injury in fact," (2) causation,

17 and (3) redressability. (*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).)  To establish

18 standing under the UCL, FAL, and CLRA, "a plaintiff must show he personally lost money or

19 property because of his own actual and reasonable reliance on the allegedly untrue or misleading

20 statements." (*Williamson*, 2012 WL 1438812, *8 (citing *Kwikset Corp. v. Superior Court* (2011) 51

21 Cal.4th 310, 326-27 and *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 641).)  To establish

22 actual reliance, plaintiffs do not have to allege that the advertising was "the sole or decisive cause" of

23 their purchases, but they must show that the advertising was an "immediate cause." (*Kwikset*, 51 Cal.

24 4th at 326-27.) The Complaint does not support a plausible inference of reliance or injury.

25            **1.**     **It Is Not Plausible That Plaintiffs Reasonably And Actually Relied On The**
                **Challenged Statements, Or Suffered Injury**

26

27       **No Plausible Deception or Reliance.**  Apparently, it was important to Plaintiffs that the

products did not contain an ingredient (natural or otherwise) added for color.  Although the Complaint

28

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  never says so, Plaintiffs suggest that Clover's "Only Natural Ingredients" statement made them believe
2  that the product did not contain an ingredient for color.  But plaintiffs concede that they read the
3  labels, including the list of ingredients (Complaint at ¶¶ 80-85), and the ingredient list plainly
4  discloses an ingredient "for color" (for an item plaintiffs did not purchase). It is, therefore, not
5  plausible that Plaintiffs believed the products contained no ingredient for color.  Further, as to the
6  vanilla yogurt purchased, the label clearly states that an ingredient is "organic vanilla flavor."
7  (Complaint at ¶ 68.)  For this reason, and the others detailed above, plaintiffs' "natural" allegations are
8  not plausible.

9      **No Plausible Injury.** Plaintiffs suffered no economic injury as a result of Clover's alleged
10 conduct. Plaintiffs paid for the products, presumably consumed them, and have not alleged that the
11 products were tainted, spoiled, or contaminated in any way or that they caused any physical injuries.
12 In other words, plaintiffs got what they bargained for and what the product was advertised to be - i.e.,
13 a product containing yogurt and fruit with the listed ingredients (including an ingredient for flavor and
14 evaporated cane juice) and the nutritional content identified on the Nutrition Facts Panel (including 18
15 and 24 grams of sugar). (*Cf. Kwikset*, 51 Cal.4th at 330 (consumer who relies on a label that expressly
16 misrepresents the product has incurred an economic loss because there is a difference between the
17 product "as labeled" and the product "as it actually is").)  Under *Kwikset*, Plaintiffs here incurred no
18 economic injury, because there was no difference between the product "as labeled" and the product
19 "as it actually is.[8]

20     Against this background, the complaint is exposed for what it is: an attempt to enforce alleged

21

22 _____

23 [8] Other courts have recognized the same principle. For example, in *In re Fruit Juice Products Marketing and Sales Practices Litigation*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011), plaintiffs alleged the presence of trace amounts of lead rendered fruit juices unsuitable for their intended purpose. The
24 court concluded: "Because Plaintiffs are unable to show that any actual harm resulted from consumption of the fruit juice products, their allegation of economic injury lacks substance. The fact is
25 that Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm." (*Id.*; *see also Frye v. L 'Oreal USA, Inc.*, 583 F.Supp.2d 954, 958 (N.D. Ill. 2008); *Gomez v.*
26 *Wells Fargo Bank*, 676 F.3d 655, 661-62 (8th Cir. 2012); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319-21 (5th Cir. 2002); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009); *Weaver v. Chrysler*
27 *Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176-78 (D.D.C. 2003).)

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  technical, non-injury-causing FDCA violations titled as a false advertising action. For example,

2  plaintiffs allege that, based on FDCA labeling violations, the products they purchased were "legally

3  worthless." (Complaint at ¶ 67.) This is not a genuine or concrete harm. (*See Herrington v. Johnson*

4  *& Johnson Consumer Cos.*, 2010 WL 3448531, at * 1-14 (N.D. Cal. Sept. 1, 2010) (even if plaintiff

5  would not have purchased products had she known they contained "probable carcinogens and other

6  unsafe substances," that is insufficient to "allege a cognizable injury to consumers" where plaintiffs

7  did not allege that products were defective); *Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL

8  1082026, at *4 (N.D. Cal. Apr. 22, 2009) (consumer had no claim where medicine performed as

9  intended, even though consumer alleged she would not have purchased medicine had she known it

10  was "adulterated" under the FDCA).)

11      Because the SAC contains no plausible allegations that plaintiffs relied on the alleged false

12  advertising or suffered any injury, plaintiffs lack standing to bring this action.[9]

13              **2.    Plaintiffs May Not Pursue Claims Based on Statements They Did Not See
                        and        Products        They        Did        Not        Purchase**

14

15      The Complaint is full of allegations about statements plaintiffs never saw and products they

16  never purchased (for example, the twelve yogurts listed in ¶ 12 and the Natural Dairy line of products

17  referenced in ¶ 65, when Plaintiffs admit they only purchased two yogurts in ¶ 79).[10]

18      But Plaintiffs cannot be deceived by something they never saw, and cannot be injured by a

19  purchase they never made. (*See Johns v. Bayer Corp.*, 2010 WL 476688, at *4-5 (S.D. Cal. Feb. 9,

20  2010); *Dvora v. Gen. Mills, Inc.*, 2011 WL 1897349, *8 (C.D. Cal. May 16, 2011); *In re Ferrero*

21  *Litig.*, 794 F.Supp.2d at 1112; *Carrea*, 2011 WL 159380, *2-3; *Zwart v. Hewlett-Packard Co.*, 2011

22

23  [9] Plaintiffs' allegation that they did not know Clover's labeling statements "were unlawful and

24  unauthorized" is more of the same. Otherwise, every regulatory violation could be transformed into a
    false advertising claim. (*See Loreto v. The Procter & Gamble Co.*, 737 F. Supp. 2d 909, 921-22 (S.D.

25  Ohio 2010) (dismissing claim based on allegation that plaintiffs would not have purchased products
    had they known of FDCA violations); *SEC v. Reyes*, 491 F.Supp.2d 906, 912 n.6 (N.D. Cal 2007) ("If

26  a misrepresentation is deemed material simply because it is a misrepresentation, then the law's
    materiality requirement is altogether meaningless").)

27  [10] Even if Plaintiffs had relied upon these statements, their claims would still fail. The statements are
    accurate, not deceptive, and state that evaporated cane juice is a sweetener.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-7301-8645.2                                    11                            C-13-1517-EDL
DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1 | WL 767750, at *3-4 (N.D. Cal., Feb. 25, 2011).)

2 | **D.   Clover Does Not Violate The Labeling Regulations**

3 | As described above, allegations of technical regulatory violations are insufficient as a matter of

4 | law to state a false advertising claim. (*See Delacruz*, 2012 WL 2563857; *Mason*, 774 F.Supp.2d

5 | 699).) In any event, Clover did not commit the regulatory violations alleged in the complaint.

6 | **1.   Clover Does Not Violate the Standard of Identity for Yogurt**

7 | Plaintiffs allege that Clover's use of evaporated cane juice violates the standard of identity for

8 | yogurt (21 C.F.R. § 131.200), because evaporated cane juice is not listed as one of the "nutritive

9 | carbohydrate sweeteners" in the regulation.  Plaintiffs are wrong.[11]

10 | As the Complaint makes clear, Clover manufactures products that contain yogurt and fruit.

11 | The FDA recognizes that a company may combine multiple foods in one product without violating the

12 | standard of identity.  (*See, e.g.*, FDA Compliance Guide CPG § 550.475 (allowing mixtures of

13 | standardized and non-standardized jellies); § 585.600 (allowing mixtures of canned peas and carrots).

14 | First, the standard of identity includes "cane" and unlike its description of "invert sugar (in

15 | paste or sirup form)," the FDA does not limit cane to a particular form. (21 C.F.R. § 131.200(d)(2).)

16 | Second, if there were any confusion over the FDA's position, the FDA has proposed a new standard of

17 | identity for yogurt that allows any "safe and suitable sweetening ingredients." (74 F.R. 2443, 2455

18 | {Jan. 15, 2009).) Evaporated cane juice is unquestionably a "safe and suitable sweetening ingredient,"

19 | and there is no allegation to the contrary.  Significantly, the FDA has also suggested that it will not

20 | enforce violations of the current standard of identity (relied on by Plaintiffs) if companies comply with

21 | the proposed one (in which evaporated cane juice is unquestionable permitted). (*Id.* ("Pending

22 | issuance of a final rule amending the existing standard of identity for yogurt . . . FDA intends to

23 | consider the exercise of its enforcement discretion on a case-by-case basis when yogurt products are in

24 | compliance with the standard of identity proposed in this proposed rule").)

25 |

26 |

27 | [11] Although not relevant to this motion, Clover's products meet the standard of identity of low-fat and non-fat yogurt, not merely yogurt. 21 C.F.R. §§ 131.203 (low-fat), 131.206 (non-fat).

28 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## 2.   Clover's Disclosure of Evaporated Cane Juice Is Not Unlawful

Plaintiffs allege that evaporated cane juice is not the "common and usual name" for an ingredient.[12] Plaintiffs allege no facts, however, to support the argument, and are left to rely on draft, non-binding FDA guidance from 2009. Plaintiffs' reliance shows a fundamental misunderstanding on their part. The FDA could not have been clearer that the guidance may not be relied upon in this or any other forum:

•   "This draft guidance, when finalized, will represent the Food and Drug Administration's {FDA's) current thinking on this topic. It does not create or confer any rights for or on any person and does not operate to bind FDA or the public." (Complaint at ¶ 31.).

•   "FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities." (Complaint at ¶ 31.)

•   The guidance states: "Draft Guidance," "Contains Nonbinding Recommendations," "distributed for comment purposes only," and "Not for Implementation." ." (Complaint at ¶ 31.)

According to its own terms, therefore, the guidance carries no force.[13] Indeed, the guidance does not even pertain to the Plaintiffs' alleged concern over evaporated cane juice, namely that they allegedly did not know it was a sweetener. Rather, the guidance relates to a concern that consumers may think the ingredient is "juice."[14]

---

[12] Plaintiffs also allege that evaporated cane juice has no nutritive value, claiming that (i) it is the same as sugar, and (ii) unlike evaporated cane juice, natural sugar cane is "healthy and nutritious." Neither allegation helps Plaintiffs. Plaintiffs' own allegations show that evaporated cane juice is not sugar. (Draft, non-binding FDA guidance stating that evaporated cane juice should be declared as dried cane syrup, not sugar).

[13] Not surprisingly, Plaintiffs quote none of the guidance's express limitations in the Complaint. Even worse, Plaintiffs quote statements from the guidance, such as "[s]weeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as 'evaporated cane juice'", but fail to include the FDA's instruction that "[t]he use of the word should in Agency guidance means that something is suggested or recommended, but not required".

[14] Plaintiffs' reliance on FDA warning letters fares no better. A "warning letter is informal and advisory."   See FDA Regulatory Procedures Manual, Section 4-1¬1 (http: //www fda. gov/downloads/ICECl/ComplianceManuals/RegulatorgroceduresManual/UCM0743 30.pdf). FDA warning letters are not final legal determinations. (*Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 547 F.Supp.2d 939, 946 (E.D. Wis. 2008); *Prof'ls & Patients for Customized Care v. Shalala*, 847 F.Supp.1359, 1365 (S.D. Tex. 1994); *Estee Lauder, Inc. v. FDA*, 727 F.Supp.1, 5 (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Plaintiffs' misguided reliance on the draft, non-binding guidance is a function of their inability

2  to allege facts demonstrating that evaporated cane juice is not the common or usual name for an

3  ingredient.  For example, Plaintiffs do not allege how many products are marketed with the evaporated

4  cane juice, how long evaporated cane juice has been used, or other indicia relevant to whether it is a

5  common and usual name.  (See 21 C.F.R. 102.5(d) ("The common or usual name for an ingredient is

6  the name established by common usage or by regulation").)

7    Indeed, materials cited in the Complaint indicate that evaporated cane juice is a common and

8  usual name.

9  **V.    PLAINTIFFS' CLAIMS ARE PREEMPTED, AND FALL UNDER THE PRIMARY JURISDICTION            OF            THE            FDA**

10

11    **A.    Plaintiffs' State Law Claims Are Impliedly Preempted (21 U.S.C. § 337)**

12    Congress and the FDA have created a detailed, rigorous, comprehensive, and uniform system

13  for labeling food products through the Food Drug & Cosmetics Act ("FDCA") (21 U.S.C. § 301, et

14  seq.), as amended by the Nutritional Labeling & Education Act ("NLEA"), and the implementing

15  regulations promulgated under the FDCA and NLEA (21 C.F.R. §§ 1.1, et seq.).  This federal

16  statutory and regulatory scheme is designed to ensure that food is safe and is labeled in a consistent

17  manner that does not mislead consumers.  (See, e.g., 21 U.S.C. § 341.)

18    With certain limited exceptions (not applicable here), only the federal government may enforce

19  the FDCA. 21 U.S.C. § 337.  To allow a private person to prosecute a state law private right of action

20  based on a violation of the FDCA (as plaintiffs attempt to do here) would directly interfere with the

21  governmental prosecutorial discretion and federal government oversight that is built into the FDCA,

22  and it would conflict with the clear congressional intent to provide for a comprehensive and exclusive

23  governmental interpretive and enforcement scheme.

24    Pursuant to the Supremacy Clause, "Congress has the power to preempt state law." (*Crosby v.*

25  *National Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citations omitted).)  In determining

26

27  

(D.D.C. 1989); *Genendo Pharmaceutical NV. v. Thompson*, 308 F.Supp.2d 881, 885 (N.D. Ill. 2003).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  whether a state law is preempted, the "ultimate touchstone" is congressional intent. (*Medtronic, Inc. v.*
2  *Lohr*, 518 U.S. 470, 485 (1996); *see English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990).) "As a
3  result, any understanding of the scope of a pre-emption statute must rest primarily on a fair
4  understanding of congressional purpose." (*Medtronic*, 518 U.S. at 485-86 (internal quotations
5  omitted).)  Where, as here, it is clear that Congress intended that a regulatory agency maintain full
6  control to issue regulations, and to interpret and enforce the law, private actions are impliedly
7  preempted.

8       Plaintiffs will argue that their claims do not offend Congress's express ban on private
9  enforcement of the FDCA because they are proceeding on identical state law. However, by precluding
10  a private right of action "for the enforcement, or to restrain violations, of this chapter," section 337(a)
11  necessarily "conflicts" with plaintiffs' state law claims because whether couched in Sherman Law
12  terms or not, they are based on a violation of the FDCA. (*See Animal Legal Defense Fund v. Provimi*
13  *Veal Corp.*, 626 F.Supp.278, 283 (D.Mass.1986) (state law claims based on FDCA violations and a
14  parallel Massachusetts statute were preempted because the FDCA precludes a private right of action).)

15       Plaintiffs will further assert that Congress included an express preemption provision in the
16  FDCA (21 U.S.C. § 343-1) that does not specifically prohibit private state law claims, and the
17  inclusion of this provision implies that Congress did not intend to preempt other matters beyond the
18  provision's reach. (*Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995).) An express preemption
19  provision, however, does not "entirely foreclose[] any possibility of implied pre-emption." (*Id.*; *see*
20  *also Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 869 (2000).)

21       Because allowing Plaintiffs' state law claims here would conflict with the clear congressional
22  intent to preclude private enforcement of the FDCA, Plaintiffs' claims are impliedly preempted.
23  There's no doubt that Plaintiffs' claims flow directly from the FDCA; the Complaint is replete with
24  references to the FDCA and alleged violations. Accordingly, allowing Plaintiffs to proceed with their
25  claims would necessarily interfere with the exclusive prosecutorial discretion of the federal
26  government with respect to FDCA violations and conflict with the clear congressional intent to
27  preclude a private right of action based on an FDCA violation. (*Porn Wonderful LLC v. Coca Cola*
28  *Co.*, 679 F.3d 1170, 1175-76 (9th Cir. 2012); *see also, e.g., Ethex Corp. v. First Horizon Pharm.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   *Corp.*, 228 F.Supp.2d 1048, 1055 (E.D. Mo., 2002) (dismissing defendant's false advertising

2   counterclaim despite defendant's insistence "that it is not attempting to privately enforce the

3   provisions of the FDCA," but where the "touchstone" of defendant's argument was an FDCA

4   violation); *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, 1997 WL 94237, at *7 (D. Kan. Feb. 26, 1997)

5   (where the "crux" of plaintiffs unfair competition claim was an FDCA violation, claim was

6   preempted).)

7       *Porn Wonderful* is instructive. There, the Ninth Circuit barred false advertising claims filed

8   under the Lanham Act, finding they were incompatible with the scope of the FDCA and the FDA's

9   role in interpreting and enforcing the FDCA. In its detailed reasoning, the Ninth Circuit emphasized

10   that private litigants may not (i) "enforce the FDCA or its regulations because allowing such a suit

11   would undermine Congress's decision to limit enforcement of the FDCA to the federal government,"

12   (ii) maintain a "claim that would require a court originally to interpret ambiguous FDA regulations,

13   because rendering such an interpretation would usurp the FDA's interpretive authority," or (iii) pursue

14   a claim that requires "litigating whether that conduct violates the FDCA" where "the FDA has not

15   concluded that particular conduct violates the FDCA." (*Porn Wonderful*, 679 F.3d at 1175-76.) *Porn*

16   *Wonderful* forecasts how the Ninth Circuit should decide the implied preemption argument presented

17   here, and guides this Court in its determination of this motion. Indeed, the Ninth Circuit's reasoning

18   applies with even more force in this case given that the Complaint alleges state law claims, which,

19   unlike the Lanham Act, are subject to the Supremacy Clause.

20       Plaintiffs' claims here undoubtedly implicate the exact concerns identified in *Porn Wonderful*.

21   Plaintiffs seek to do each of the things *Porn Wonderful* prohibits:

22       <u>First</u>, Plaintiffs attempt to bootstrap alleged violations of FDA regulations onto state-law

23   claims. They does not try to argue that the challenged labels are intrinsically misleading (because no

24   reasonable consumer could be misled). Rather, they merely asserts that Clover has technically

25   violated FDA regulations. In other words, Plaintiffs seeks to re-package their attempts to enforce FDA

26   regulations into state-law claims. But as the Ninth Circuit held, "allowing such a suit would

27   undermine Congress's decision to limit enforcement of the FDCA to the federal government." (*Porn*

28   *Wonderful*, 679 F.3d at 1176.7.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-7301-8645.2

16

C-13-1517-EDL

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1   Second, Plaintiffs ask this Court to interpret and apply FDA labeling regulations.  For
2   example, Plaintiffs ask this Court to opine on the proper way of describing evaporated cane juice,
3   even though the FDA itself has not yet made a final decision on the issue. These determinations are
4   within the sole authority of the FDA.  "[R]endering . . . an interpretation [of the FDA's regulations]
5   would usurp the FDA's interpretive authority." (*Porn Wonderful*, 679 F.3d at 1176.)

6   Finally, the fact that the FDA has not acted in the manner Plaintiffs desire is irrelevant. sWhat
7   matters is that the FDA is the proper body to act. As the Ninth Circuit put it, "[i]f the FDA believes
8   that more should be done to prevent deception, or that [Clover's] label misleads consumers, it can act.

9   Plaintiffs will no doubt rely on *In re Farm Raised Salmon Cases*, 42 Cal 4th 1077 (2008),
10  where the California Supreme Court determined that private claims for deceptive marketing of food
11  products were not preempted by federal law. (*Id.* at 1083.) For two reasons, however, *Farm Raised*
12  *Salmon* is not plaintiffs' magic bullet. First, as a state court decision interpreting a federal statute (i.e.,
13  21 U.S.C. § 337), *Farm Raised Salmon* is not binding on this Court. (*Sanchez-Llamas v. Oregon*, 548
14  U.S. 331, 354 (2006) (rejecting interpretation of federal law by the International Court of Justice and
15  explaining "[a]t the core of [the judicial] power is the federal courts' independent responsibility
16  independent from its coequal branches in the Federal Government, and independent from the separate
17  authority of the several states — to interpret federal law"); Williams v. Taylor, 529 U.S. 362, 378-379,
18  384 (2000) (rejecting state law interpretation of federal statute (AEDPA) and holding that "federal
19  courts, even on habeas, have an independent obligation to say what the law is").)

20  Second, this Court should reject the substantive underpinnings of *Farm Raised Salmon*, as they
21  are incompatible with the plain meaning of 21 U.S.C. § 337. *Farm Raised Salmon* rests on the
22  argument that "congressional silence" is a thumb on the scale towards an intention to allow private
23  actions (42 Cal.4th at 1091), but that principle was applied incorrectly in that case. The thumb should
24  have come down on the side of § 337, a specific statute that expressly limits FDCA enforcement
25  power to government agencies, and the fact that Congress took no steps to create exceptions.[15]

26

27  [15] The California Court of Appeal's decision in *Farm Raised Salmon* (42 Cal. App. 4th 805) correctly
28  and persuasively analyzes these important issues in a manner respectful of § 337, concluding that
    (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-7301-8645.2                                                    17                                              C-13-1517-EDL
DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1   As this case proves, private actions undermine the approach mandated by § 337, making every

2   technical FDCA violation the subject of a consumer class action, where interpretation of the FDCA is

3   determined on a case-by-case base, product-by-product basis, by countless numbers of judges and

4   juries who do not possess the FDA's food labeling expertise.

5       **B.    Plaintiffs' State Law Claims Are Expressly Preempted (21 U.S.C. § 343-1)**

6       The NLEA contains an express preemption provision, which provides no state "may ***directly or***

7   ***indirectly*** establish . . . ***any requirement*** for the labeling of food ***of the type***" regulated by federal law

8   "that is not identical to the [federal] requirement." (21 U.S.C. § 343-1 (emphasis added).)  This

9   express preemption provision covers federal statutes as well as labeling regulations. (*Fid. Fed. Say. &*

10  *Loan Ass 'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).)  The obvious and salutary purpose of the

11  express preemption was to create uniform national standards regarding the labeling of food. (*See, e.g.,*

12  *Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) (Posner, I.) ("It is easy to see why

13  Congress would not want to allow states to impose disclosure requirements of their own on packaged

14  food products, most of which are sold nationwide[,] [as] [m]anufacturers might have to print 50

15  different labels. . . .").[16]

16      As detailed above, Clover complies with the regulations governing the aspects of its labels that

17  plaintiffs challenge.  To the extent plaintiffs are imposing additional requirements as detailed below,

18  the claims are expressly preempted.

19      **Color Additives**.  Plaintiffs allege that the manner in which Clover markets its products ("only

20  natural ingredients") results in misbranding for those products that include color additives.  Color

21  additives - both how they are defined and how their presence in products must be disclosed on the

22  label - are pervasively regulated under the FDCA. (*See, e.g.*, 21 C.F.R. §§ 70.3(f), 101.22(a)(4), (c),

23  (k).).  Those regulations, which are promulgated under 21 U.S.C. § 343(k), are covered by the NLEA

24  _____

25  private actions enforcing the FDCA regulations via the Sherman Law are impliedly preempted.

26  [16] The "not identical" language means what it says. (*See Turek*, 662 F.3d at 427 ("Even if the
    disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the

27  Food, Drug, and Cosmetic Act, consistency is not the test [for NLEA preemption]; identity is."); see
    also 21 C.F.R. § 100.1(c)(4).)

28

4847-7301-8645.2                                    18                                    C-13-1517-EDL
DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1   preemption provision.  (21 U.S. C. § 343-1(a)(2) & (a)(3).)  By this lawsuit, Plaintiffs attempt to

2   impose additional, non-identical requirements for products with color additives, including that the

3   manufacturer may not inform consumers that the ingredients are natural.

4        **C.**     **The Complaint Should Be Dismissed Under The Primary Jurisdiction Doctrine**

5        For the same reasons that plaintiffs' claims are impliedly preempted, the Court could and

6   should dismiss the claims under the related primary jurisdiction doctrine.  That doctrine applies when

7   there is "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of

8   an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or

9   activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in

10  administration." (*Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008).)

11       Through the landslide of recent false advertising cases, Plaintiffs and their counsel seek to

12  substitute their judgment (and the judgment of judges and juries) for the expertise of the FDA.  The

13  risk from such private litigation is tremendous, especially where, as here, the claims would directly

14  intrude on the FDA's expertise, judgment, and decision-making process. (*See Pom Wonderful*, 679

15  F.3d at 1178 (admonishing courts to "keep in mind that we lack the FDA's expertise in guarding

16  against deception in the context of [food and] beverage labeling"); *Fraker v. KFC Corp.*, 2007 WL

17  1296571, at *4 (S.D. Cal. Apr. 30, 2007) ("To overlay the state law tort system over the FDCA would

18  significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative

19  duties").)

20       If every court in the 25 recent cases filed by plaintiffs' counsel adjudicates the alleged false

21  advertising claims, there is a clear danger that inconsistent rulings will leave the food and beverage

22  industry in a state of confusion.  (*See* 74 F.R. 2443, 2456 (Jan. 15, 2009) (FDA "believes that its

23  exercise of enforcement discretion will help alleviate the confusion that the petitioner contends has

24  resulted due to the existence of the stayed provisions of the current yogurt standards . . . [and] will

25  also provide a clear and flexible standard and encourage greater consistency and uniformity in the

26  marketplace for yogurt products, and thereby assist consumers in making informed choices").)  For

27  this reason, the primary jurisdiction doctrine provides yet another strong, independent basis to dismiss

28  this case. (*Gordon v. Church & Dwight Co.*, 2010 WL 1341184 (N.D. Cal. April 2, 2010) (dismissing

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-7301-8645.2         19         C-13-1517-EDL
DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1 false advertising claims where scope and intent of labels are within FDA's primary jurisdiction); *see*
2 *also United States v. W. Pac. R.R.*, 352 U.S. 59, 64 (1956); *United States v. Gen. Dynamics Corp.*, 828
3 F.2d 1356, 1363 (9th Cir. 1987).)[17]

4 ## VI.     PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL

5 ### A.     Plaintiffs' Unjust Enrichment Claim Should Be Dismissed

6 Plaintiffs' unjust enrichment claim (Complaint ¶¶ 156-159) is duplicative of their other claims
7 and, therefore, should be dismissed for the same reasons. Moreover, as this Court has recognized on
8 numerous occasions, unjust enrichment/restitution is not an independent cause of action in California.
9 (*See, e.g. Low*, 2012 WL 2873847, *15; *Williamson*, 2012 WL 1438812, *5; *In re iPhone Application*
10 *Litigation*, 844 F.Supp.2d 1040, 1075-76 (N.D. Cal. 2012); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d
11 785, 814-815 (N.D. Cal. 2011).)

12 ## VII.    THESE ALLEGATIONS HAVE BEEN ADDRESSED BY OTHER DISTRICTS COURTS IN THE NINTH CIRCUIT, WHERE THEY HAVE FAILED

13
14 Of the more than twenty-five similar cases filed by Plaintiffs' counsel relating to similar
15 issues, a number of them have dealt with similar allegations relating to yogurts. In all cases, the
16 defendants have filed similar and/or virtually identical motions to dismiss for the grounds set forth
17 herein. As of the date of this filing, Judge Gonzalez-Rogers in San Francisco and Judge Koh in San
18 Jose[18] and have granted similar motions, notably agreeing with the lack of standing as to products not
19 purchased by plaintiffs and primary jurisdiction of the FDA as to these issues. Both orders are
20 attached hereto to the declaration of Katherine A. Higgins, as Exhibits A and B respectively.

20 ## VIII.   LEAVE TO AMEND SHOULD NOT BE GRANTED

21
22 For these reasons, Clover respectfully requests that the Court grant this motion and dismiss the

---

23 [17] For example, the FDA has determined that the standard of identity for yogurt should allow "safe
24 and suitable sweetening ingredients." (74 F.R. 2443, 2447 (Jan. 15, 2009) ("FDA tentatively
concludes that the proposed amendments are necessary to modernize the current yogurt standard to
25 permit flexibility and provide for technological advances in yogurt production").) Plaintiffs
apparently disagree with that decision, but the Court should not entertain such claims. (*See Clark*, 523
26 F.3d at 1114-15 (primary jurisdiction doctrine applies where claims implicate questions that should be
addressed by the agency with regulatory authority over the relevant industry).)

27 [18] Judge Koh vacated her order granting in part and denying in part Defendant's motion to dismiss so
as to allow Defendant to file a Motion for Reconsideration.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-7301-8645.2                                    20                                    C-13-1517-EDL
DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1    Complaint with prejudice. (*See Williamson*, 2012 WL 1438812, *1546.)

2    DATED: August 5, 2013              LEWIS BRISBOIS BISGAARD & SMITH LLP

3

4                               By:        /s/ Katherine A. Higgins

5                                       Katherine A. Higgins

6                                       Nicole L. Jones
                                      Attorneys for Defendant CLOVER- STORNETTA

7                                       FARMS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# UNITED STATES DISTRICT COURT

## CERTIFICATE OF SERVICE

Amy Gitson, et al. v. Clover-Stornetta Farms, Inc.
United States District Court, Northen District of California- San Francisco Division
Case No. C13-1517 EDL (3:13-1517 EDL)

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I hereby certify that on May 21, 2013, I electronically filed the following document(s):

**DEFENDANT CLOVER-STORNETTA FARMS, INC.'S NOTICE OF MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**

with the Clerk of the Court for the United States District Court  by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

Pierce Gore, Esq.
Pratt & Associates
1871 The Alameda, Suite 425
San Jose, CA 95126
T:  408-429-6506; F:  408-369-0752
Email:  pgore@prattattorneys.com

Dated:  August 5, 2013          _Amanda Hampton_

Amanda Hampton



4850-3587-6628.1

1

# UNITED STATES DISTRICT COURT

2

## CERTIFICATE OF SERVICE

3  Amy Gitson, et al. v. Clover-Stornetta Farms, Inc.
   United States District Court, Northen District of California- San Francisco Division
4  Case No. C13-1517 EDL (3:13-1517 EDL)

5      STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

6      I hereby certify that on August 5, 2013, I electronically filed the following document(s):

7  **DEFENDANT'S NOTICE OF MOTION TO DISMISS COMPLAINT; MEMORANDUM
   OF POINTS AND AUTHORITIES IN SUPPORT**
8

9  with the Clerk of the Court for the United States District Court  by using the CM/ECF system.

10 Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

11      I further certify that some of the participants in the case are not registered CM/ECF users.

12 I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it

13 to a third party commercial carrier for delivery within 3 calendar days, to the following non-

14 CM/ECF participants:

15 Pierce Gore, Esq.
   Pratt & Associates
16 1871 The Alameda, Suite 425
   San Jose, CA 95126
17 T:  408-429-6506; F:  408-369-0752
   Email:  pgore@prattattorneys.com
18
   Valerie Lauro Nettles, Esq.
19 Lovelace and Associates, P.A.
   12870 US Hwy 98 West, Suite 200
20 Miramar Beach, FL  32550

21

22 Dated:  August 5, 2013                    _Amanda Hampton_

23                                              Amanda Hampton

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW