1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    AMY GITSON and DEBORAH ROSS,                    No. C -13-01517 EDL
     individually and on behalf of all others similarly
9    situated,                                        **ORDER GRANTING IN PART AND**
                                                      **DENYING IN PART DEFENDANT'S**
10                    Plaintiffs,                     **MOTION TO DISMISS**

11        v.

12   CLOVER STORNETTA FARMS,

13                    Defendant.
     _____/
14

15          This is a putative class action alleging that Plaintiffs have been deceived by Defendant

16   Clover-Stornetta Farms, Inc.'s labeling of its yogurt.  Plaintiffs allege that Defendant's use of the

17   term "Organic Evaporated Cane Juice" in its marketing materials is deceitful and misleading

18   because "Organic Evaporated Cane Juice" is actually sugar and/or "dried cane syrup."  Plaintiffs

19   also allege that Defendant's "natural" label is deceptive.  Plaintiffs claim that Defendant's labeling

20   violates federal and California laws.  Defendant has moved to dismiss Plaintiff's suit under Federal

21   Rule of Procedure 12(b)(6).  Based on the pleadings, the submissions of the parties and the relevant

22   law, the Court grants in part and denies in part the Motion to Dismiss.

23

24   **I.      Factual Background**

25        **A.      Plaintiffs' Factual Allegations**

26

27          Plaintiffs Amy Gitson and Deborah Ross are California residents who claim that they have

28   purchased Defendant's allegedly mislabeled yogurt products during the four years prior to the filing

     of the Complaint.  See Complaint ¶¶ 17-18.  They allege that Defendant currently markets at least 14

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   different flavors and varieties of products that list "Organic Evaporated Cane Juice" (hereafter

2   "OECJ" or "ECJ") as an ingredient. Id. ¶ 2.  Plaintiff Gitson purchased Clover Organic Farms

3   Organic Vanilla Bean yogurt, and Plaintiff Ross purchased Forest Berry Cream on Top yogurt. Id. ¶

4   79.  The Complaint includes photographs of both product containers and their labels. Id. ¶¶ 7, 68.

5   Plaintiffs claim that they believed Clover's products did not contain "sugar or dried cane syrup," and

6   that they read and reasonably relied on the label.  Compl. ¶ 80.  They allege they would not have

7   purchased the products had they known that the yogurt contained sugar or dried cane syrup. Id.

8       Plaintiffs claim that the FDA has cautioned companies not to use the term OECJ because it is

9   false and misleading, violates regulations that ensure labeling with common ingredient names, and

10  the ingredient is not a juice. Id. ¶ 3.  (The FDA's guidance with respect to the use of the term will

11  be discussed in detail in the Discussion section.)  Further, Plaintiffs argue, the FDA's Standard of

12  Identity for "yogurt" does not allow the use of the term "evaporated cane juice" because it specifies

13  what sweeteners are permitted.  See Compl. ¶ 4; 21 C.F.R. § 131.200.  Plaintiffs also contend that

14  OECJ is not the "common or usual name" for the sweetener, therefore violating 21 CFR 101.4(a)(1),

15  which requires that ingredients required to be declared on a food label be listed by their common or

16  usual name.  Plaintiffs also argue that Defendant makes unlawful "natural" claims in violation of the

17  FDCA and California's Sherman law, because the FDA prohibits the use of the term "natural color"

18  where an ingredient is used to color the product and alleges that Defendant uses other ingredients

19  which do not comport with the FDA's regulation of the term "natural." Compl. ¶ 63.

20      Defendant contends that its product labels are accurate and lawful.  As to Plaintiff's "all

21  natural" claims related to color, Defendant contends that the product contains only natural

22  ingredients and the label discloses which ingredients (elderberry juice and beet juice concentrate)

23  are used for color.  As to Plaintiff's claims regarding OECJ, Defendant points out that the Nutrition

24  Facts Panel on the product shows "Sugars 24g" and that nowhere on the product does the label state

25  that there are sugars only from milk and fruit or that the product contains no added sugars or syrups.

26  Defendant also argues that a reasonable consumer would know that "evaporated cane juice" is a

27  sweetener, particularly a consumer who knew that "dried cane syrup" is a sweetener ingredient, as

28  Plaintiffs allege they did. See Compl. ¶ 80.

**United States District Court**
For the Northern District of California

## II.       Legal Standard

### A.       Motion to Dismiss under Rule 12(b)(6)

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted  as true and construed in the light most favorable to the plaintiff."  Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).  A court need not, however, accept as true the complaint's "legal conclusions."  Iqbal, 129 S. Ct. at 1949.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 1950.  Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief."  Id.  Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ."  Id. at 1949 (internal quotation marks omitted) & 1950.  That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

### B.       Rule 9(b)

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); see Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).  The allegations must be "specific enough to give defendants notice of

the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and no just deny that they have done anything wrong." <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985).  The plaintiff must set forth "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotations omitted).

**III.    Discussion**

Plaintiffs bring the following claims: 1) violations of the "unlawful" prong of California Business and Professions Code § 17200 <u>et seq.</u> (The "UCL"); 2) violations of the "unfair" prong of California Business and Professions Code § 17200 <u>et seq.</u>; 3) violations of the "fraudulent" prong of California Business and Professions Code § 17200 <u>et seq.</u>; 4) violations of the "misleading" prong of the False Advertising Law ("FAL"), California Business and Professions Code § 17500 <u>et seq.</u>; 5) violations of the "untrue" prong of the False Advertising Law, California Business and Professions Code § 17500 <u>et seq.</u>; 6) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 <u>et seq.</u>; and 7) unjust enrichment.

     **A.    Requests for Judicial Notice**

Both parties have requested that the Court consider documents attached to their briefs.  In support of its motion, Defendant filed the Declaration of Katherine A. Higgins ("Higgins Decl.") which attached several recent Orders from courts in this District.  <u>See</u> Docket No. 22.  The Court will consider those orders as it would any other District Court authority.  Plaintiffs filed a Request for Judicial Notice and Declaration of Valerie Nettles ("Nettles Decl.") in support of their opposition.  <u>See</u> Docket No. 26.  Under Federal Rule of Civil Procedure 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination

by resort to sources whose accuracy cannot reasonably be questioned."  Furthermore, a court "shall take judicial notice if requested by a party and supplied with the necessary information."  See Fed. R. Civ. P. 201(d); Mullis v. United States Bank, 828 F.2d 1385, 1388 n. 9 (9th Cir. 1987).  A court may also take judicial notice of matters of public record.  Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001).

The Nettles Declaration attaches as Exhibits a number of warning letters sent by the FDA to various businesses (Exs. 2-5), correspondence relating to evaporated cane juice from the FDA to Dr. Eric Wilhemsen and Martin J. Han (Exs. 6, 7), and the FDA website describing "What is a Warning Letter" (Ex. 8).  See Ivie v. Kraft Foods Global, Inc., No. 12-2554, 2013 WL 685372, at *4 (N.D. Cal. Feb. 25, 2103) (Whyte, J.) (taking notice of several publicly available FDA publications.

All of Plaintiff's RFN Exhibits are available for public download on the FDA's website or at the federal regulatory website www.regulations.gov.  Defendant did not object to Plaintiffs' RFN.  Accordingly, the Court will take notice of all of the Exhibits in Plaintiffs' RFN.

**B.    Standing**

**1.    Injury in Fact**

**a.    Products Plaintiffs Purchased**

Defendant argues that Plaintiffs lack standing under both Article III of the United States Constitution and under the California UCL, FAL, and CLRA.  To establish Article III standing, a plaintiff must plead 1) injury in fact, 2) causation, and 3) redressability.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Standing under the California statutes requires that a plaintiff show an economic injury:  that she personally lost money or property because of her own "actual and reasonable reliance" on the allegedly untrue or misleading statements.  Kwikset Corp. v. Superior Court, 51 Cal. 4th. 310, 326-27 (2011).  To show actual reliance, a plaintiff must allege that the allegedly false advertising was an immediate cause of her purchase.  Id.

Defendant contends that Plaintiffs suffered no injury, economic or otherwise, when they purchased its yogurt.  It argues that Plaintiffs paid for the products, presumably consumed them, and

1    have not alleged that the products were tainted or spoiled or caused any injury. Defendant claims

2    that Plaintiffs got exactly what they bargained for – an accurately labeled yogurt product – and have

3    suffered no harm. See Mot. at 10-11. Defendant contrasts Kwikset, where a consumer who relied

4    on a label that actually misrepresented the product suffered an economic loss because of the

5    difference between the product as it was labeled and the product as it actually was. 51 Cal. 4th at

6    330; see also In re Fruit Juice Products Marketing and Sales Practices Litig., 831 F. Supp. 2d 507,

7    512 (D. Mass. 2011) ("Because Plaintiffs are unable to show that any actual harm resulted from

8    consumption of fruit juice products, their allegation of economic injury lacks substance. The fact is

9    that Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without

10   suffering harm."). Here, Defendant argues, there is no difference between the product as labeled and

11   the product that Plaintiffs consumed, and therefore, no economic loss.

12

13                                    **i.    ECJ Claims**

14          Plaintiffs contend that their allegations are sufficient to plead injury-in-fact and economic

15   injury, because they purchased products they would not otherwise have purchased had they known

16   the truth about Defendant's ingredients and product labeling. See Compl. ¶ 80 ("Plaintiffs would

17   not have purchased Defendant's Misbranded Food products had Plaintiffs known that the

18   Misbranded Food Products contained sugar or dried cane syrup."). They also allege that they paid a

19   premium price for the products. Id. ¶ 67.

20          Courts in this district have held, repeatedly, "that overpaying for goods or purchasing goods

21   a person otherwise would not have purchased based upon alleged misrepresentations by the

22   manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing."

23   Pirozzi v. Apple Inc., 913 F. Supp. 2d 840, 846-47 (N.D. Cal. 2012) (Gonzalez Rogers, J.); see also

24   Brazil v. Dole Food Company, No. 12-1831, 2013 WL 1209955, at *12-13 (N.D. Cal. March 25,

25   2013) (Koh, J.) (holding, in a food labeling case, that the plaintiff properly pleaded a "concrete and

26   particularized injury based on the fact that he allegedly was deceived, and then paid money that he

27   would not otherwise have paid had he known about the true nature of Defendants' products.").

28          The same holds true for economic injury under the California statutes. Under Kwikset, a

1   plaintiff can allege injury-in-fact by asserting that he spent money on an allegedly mislabeled

2   product.  "A consumer who relies on a product label and challenges a misrepresentation contained

3   therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would

4   not have bought the product but for the misrepresentation."  51 Cal. 4th at 330.  "The injury alleged

5   is that they were deceived, and paid money they would not otherwise have paid had they known

6   about the [allegedly deceptive ingredient]."  Astiana v. Ben & Jerry's Homemade, Inc., Nos. 10-

7   4387, 10-4937, 2011 WL 2111796, at *5 (N.D. Cal. May 26, 2011) (Hamilton, J.).  In Samet v.

8   Proctor & Gamble Co., the court held that the plaintiffs

> relied on the misleading product labels in purchasing the products, and had they known the
> truth, they would not have purchased the products at the premium price paid.  Accepting as
> true these allegations for the purpose of a motion to dismiss, Plaintiffs spent money they
> otherwise would have saved but for defendants' acts of unfair competition.  Courts in this
> district have overwhelmingly found that such allegations are sufficient to establish economic
> injury.  Whether Plaintiffs actually did pay a premium price as a result of false and
> misleading labeling remains to be determined at a later stage in this litigation.  As alleged,
> however, the injury of paying a higher price for a falsely advertised product is enough to
> show Plaintiffs suffered particularized harm to a legally protectable interest in the form of an
> economic loss.

Samet v. Proctor & Gamble Co., No. 12-1891, 2013 WL 3124647, at *3 (N.D. Cal. June 18, 2013)

(Grewal, J.).  Whether or not the alleged misrepresentation is plausible is not a question of standing.

See Astiana v. Ben & Jerry's Homemade, 2011 WL 2111796, at *5.

        Defendant nonetheless argues that after the passage of Proposition 64, in 2004, a plaintiff

may only pursue a UCL claim if she "has suffered injury in fact and has lost money or property as a

result of the unfair competition."  Cal. Bus. & Prof. Code. § 17204; Williamson v. Reinalt-Thomas

Corp., No 11-3548, 2012 WL 1438812, at *10 n.3 (N.D. Cal. Apr. 25, 2012) (noting that Proposition

64 requires a plaintiff to establish reliance in order to establish standing).  However, as will be

discussed below regarding plausibility and particularity, Plaintiffs have alleged that they relied on

Defendant's labels in making their purchases, and that they were deceived by those labels.

Defendant's emphasis on this point, particularly in its reply, is unavailing as to the ECJ claims.

        Judge Koh's order in Kane v. Chobani, No. 12-2425, 2013 WL 5289253, at *7 (N.D. Cal.

Sept. 19, 2013) (reconsideration order), raises a question about standing that the Court will also

consider here.  That order granted the defendant's motion for reconsideration as to whether the

plaintiffs had standing to pursue ECJ claims when they alleged in the complaint that they believed

**United States District Court**
For the Northern District of California

1   the yogurt they purchased contained "only natural sugars from milk and fruit and did not contain

2   added sugars or syrups."  2013 WL 5289253, at *7.  The court stated that it was significant that the

3   complaint suggested that the plaintiffs understood that dried cane syrup was a form of sugar, since

4   they referred to the two terms interchangeably throughout the complaint.  The court wondered how

5   the plaintiffs "could have realized that dried cane syrup was a form of sugar but nevertheless

6   believed that evaporated cane juice was not."  Id.  The court held that "[a]bsent some factual

7   allegation concerning what Plaintiffs believed ECJ to be if not a form of sugar or a juice containing

8   some form of sugar, Plaintiffs' allegations that they read the label, were aware that the Yogurts

9   contained ECJ, and nevertheless concluded that the Yogurts contained 'only natural sugars from

10  milk and fruit and did not contain added sugars or syrups' is [sic] simply not plausible."  Id.  The

11  plaintiffs also alleged that they believed ECJ to be healthier than refined sugars and syrups.  The

12  court concluded that the allegations of reliance on the defendant's statements was insufficiently

13  pleaded under Rules 8(a) and 9(b), and granted the motion to dismiss for lack of standing, without

14  prejudice.

15      Here, Plaintiffs allege that they would not have purchased Defendants' products "had

16  Plaintiffs known that the Misbranded Food Products contained sugar or dried cane syrup."  Compl. ¶

17  80.  The Court shares Judge Koh's skepticism that a consumer knowledgeable enough to understand

18  that "dried cane syrup" is a form of sugar could be deceived as to the true nature of "evaporated cane

19  juice."  However, Plaintiffs here did not include an allegation that they thought that the yogurt

20  contained "only natural sugars from milk and fruit," as the Kane plaintiffs did, or an allegation that

21  they thought that ECJ was healthier than refined sugar.   Therefore, Plaintiffs have adequately

22  pleaded standing for their ECJ claims under Article III and the California statutes.

23

24

25      **ii.      "Natural" Claims**

26

27      As to Plaintiff's "natural" labeling claims, Plaintiff has not adequately pleaded reliance and

28  therefore does not have standing to pursue these claims.   See Compl. ¶ 59-69.  The gravamen of

Plaintiffs' allegations here is that the FDCA and the Sherman Law prohibit food manufacturers from using "all natural" or "natural" when the products contain artificial ingredients, colors, or flavorings. Id. ¶ 59.  Plaintiffs claim that the added ingredients for color in some of Defendant's yogurt violate the law and the regulations, as do other ingredients, such as locust bean gum and tapioca starch.  Id. ¶ 65.  Plaintiff Amy Gitson allegedly purchased a Clover Organic Farms Organic Vanilla Bean Yogurt, which included "organic vanilla flavor," which Plaintiffs allege is not a natural ingredient. However, the allegations in the complaint about Plaintiffs' reliance on the label's "natural" claim are brief, general, and conclusory, and do not relate to Plaintiff Gitson's reliance on the label in her purchase of the Organic Vanilla Bean Yogurt:  "[i]n reliance on Defendant's 'Organic Evaporated Cane Juice' ingredient name, as well as Defendant's 'all natural' claims, Plaintiffs and thousands of others in California and throughout the United States purchased the misbranded food products at issue."  Compl. ¶ 85.   The Complaint does not allege that Plaintiff Gitson read and relied on the label's "natural" claim in making her purchase, or that she would not have purchased it had she known that it the "organic vanilla flavor" was allegedly not a natural ingredient.  Therefore, Plaintiffs do not have standing to pursue their " natural" claims, and the Court dismisses those claims without prejudice.

### b.    Products That Plaintiffs Did Not Purchase

Defendant argues that Plaintiffs do not have standing to pursue their claims based on the products that they did not purchase, because they cannot be deceived by something they never saw and cannot be injured by a purchase they never made.  See In re Ferrero Litig., 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011) (holding that where plaintiffs did not actually allege that they relied on statements from the defendant's website, they lacked standing to challenge those statements under the UCL, FAL, and CLRA).  The Complaint alleges that Plaintiffs purchased two kinds of yogurt (Compl. ¶ 79) while referring to twelve other kinds of yogurt in ¶ 2 that Plaintiffs did not purchase. Plaintiffs also refer to yogurt from the Defendant's "Natural Dairy" line of products in the Complaint.  Compl. ¶ 65.

United States District Court
For the Northern District of California

1    Plaintiffs argue that they have standing to pursue claims related to substantially similar

2   products to the ones they purchased.  Purchasers of those products, they claim, have been injured in

3   precisely the same manner as Plaintiffs, and the claims should be allowed to go forward.  Plaintiffs

4   allege that the non-purchased products are all yogurt products and the labeling claims at issue are

5   identical with regard to evaporated cane juice and the "natural" representation.  Opp. at 20.

6   Plaintiffs cite a number of cases from this district to support their proposition.  See, e.g., Khasin v.

7   Hershey Co., No. 12-1862, 2012 WL 5471153, at *9 (N.D. Cal. Nov. 9, 2012) (Davila, J.) (holding,

8   on a motion to strike, that claims related to products the plaintiff did not purchase should not be

9   stricken because "any concerns about the differences among the products are better addressed at the

10   class certification stage rather than at the present stage"); Astiana v. Dreyer's Grand Ice Cream, Inc.,

11   No. 11-2910, 2012 WL 2990766, at *11-13 (N.D. Cal. July 20, 2012) (Chen, J.) (noting that while

12   authority goes both ways, "the critical inquiry seems to be whether there is sufficient similarity

13   between the products purchased and not purchased," including whether the products are of the same

14   kind, composed of largely the same ingredients, and bear the same alleged mislabeling); Colluci v.

15   ZonePerfect Nutrition Co., No. 12-2907, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012) (Conti,

16   J.) (collecting cases to determine how much similarity among products is required for standing).

17    In Colluci, the products at issue were different varieties of Zone Nutrition bars.  The plaintiff

18   had purchased Chocolate Peanut Butter Zone Nutrition bars, but not the other varieties included in

19   the complaint.  2012 WL 6737800, at *4.  The court held that the purchased and unpurchased

20   products were similar enough to give the plaintiff standing, because all the products were nutrition

21   bars, shared a uniform size and shape, and on casual inspection the only obvious difference was the

22   flavor.  Although some different ingredients were used, six of the nine challenged ingredients

23   appeared in all twenty flavors, and all twenty bore the same challenged "All Natural" label.  2012

24   WL 6737800, at *4-5.

25    Here, the fourteen accused products are all yogurt varieties that include OECJ as an

26   ingredient.  See Compl. ¶ 2. Although there are some differences among the products, as in Colluci,

27   on casual inspection the obvious difference is flavor.  The Court holds that these products are

28   sufficiently similar to those purchased by the two named Plaintiffs to survive the pleading stage.

United States District Court
For the Northern District of California

1    Defendant's motion to dismiss on standing grounds as to the ECJ claims is denied.

2    Defendant's motion to dismiss on standing grounds as to the "all natural" claims is granted, and

3    those claims are dismissed without prejudice.

4

5    **C.      Preemption**

6

7    Congress has the power, under the Supremacy Clause, to preempt state law.  See Crosby v.

8    Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000).  The "ultimate touchstone" for preemption

9    is congressional intent.  Medtronic v. Lohr, 518 U.S. 470, 485 (1996). Defendant argues that

10   Plaintiffs' claims are preempted because there is no private right of action to enforce regulations

11   promulgated by the Food and Drug Administration ("FDA") and because the rigorous system of

12   labeling food products through the FDCA fully occupies the field.  The Court will briefly discuss the

13   statutory framework before analyzing the parties' preemption arguments.

14   The FDCA, 21 U.S.C. § 301 et seq., "gives the FDA the responsibility to protect the public

15   health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled.'"  Lockwood v.

16   ConAgra Foods, Inc., 597 F. Supp. 2d 1029, 1030 (N.D. Cal. 2009) (quoting 21 U.S.C. §

17   393(b)(2)(A)).  "Misbranded" food is prohibited; food is "misbranded" if its labeling is "false or

18   misleading in any particular."  21 U.S.C. § 343(a)(1).  The Nutrition Labeling and Education Act of

19   1990 ("NLEA") amended the FDCA to include new labeling requirements.  Pub. L. No. 101-535,

20   104 Stat. 2353 (1990).  The purpose of the NLEA was "to clarify and to strengthen the Food and

21   Drug Administration's legal authority to require nutrition labeling on foods, and to establish the

22   circumstances under which claims may be made about nutrients in foods."  H.R. Rep. No. 101-538,

23   at 7 (1990) (quoted in Brazil v. Dole Food Company, No. 12-1831, 2013 WL 1209955, at *5 (N.D.

24   Cal. March 25, 2013) (Koh, J.)).  The NLEA includes an express preemption requirement: "Except

25   as provided in subsection (b) of this section, no State or political subdivision of a State may directly

26   or indirectly establish . . . any requirement for a food which is not identical to the requirements of

27   the FDCA."  21 U.S.C. § 343-1(a).  In Medtronic v. Lohr, the Supreme Court held that a nearly

28

1  identical preemption provision[1] in the Medical Devices Amendment did not deny states "the right to

2  provide a traditional damages remedy for violations of common-law duties when those duties

3  parallel federal requirements." 518 U.S. 470, 495 (1996).

4      California has its own food labeling law, the Sherman Law, which expressly adopts the

5  federal labeling requirements as its own: "[a]ll food labeling regulations and any amendments to

6  those regulations adopted pursuant to the federal act . . . shall be the food regulations of this state."

7  Cal. Health & Safety Code § 110100 et seq. The misbranding section of California's Sherman Law

8  also mirrors federal law. See, e.g., Cal. Health & Safety Code § 110660 ("Any food is misbranded if

9  its labeling is false or misleading in any particular.").

10     The FDCA does not include a private right of action. See Buckman Co. v. Plaintiffs' Legal

11  Comm., 531 U.S. 341, 349 n.4 (2001) ("The FDCA leaves no doubt that it is the Federal

12  Government rather than private litigants who are authorized to file suit for noncompliance with the

13  [FDCA]"). The question here, therefore, is whether the FDCA preempts plaintiffs' suit to enforce

14  California's food-labeling requirements under the Sherman Law, which are, as discussed above,

15  identical to the FDCA's requirements. "Federal preemption occurs when: 1) Congress enacts a

16  statute that explicitly preempts state law; 2) state law actually conflicts with federal law; or 3)

17  federal law occupies a legislative field to such an extent that it is reasonable to conclude that

18  Congress left no room for state regulation in that field." Chae v. SLM Corp., 593 F.3d 936, 941 (9th

19  Cir. 2010) (internal quotations and citations omitted). There is a strong presumption against federal

20  preemption in the regulation of health and safety, including laws that regulate food marketing and

21  labeling, because food laws are traditionally within the police powers of the states. See Florida

22  Lime & Avocado Growers v. Paul, 373 U.S. 132 (1963).

23

24  ─────────────

25  [1]      "21 U.S.C. § 360k. State and local requirements respecting devices
(a) General rule. Except as provided in subsection (b) of this section, no State or political subdivision
26  of a State may establish or continue in effect with respect to a device intended for human use any
requirement—
27  (1) which is different from, or in addition to, any requirement applicable under this chapter to the device,
and
28  (2) which relates to the safety or effectiveness of the device or to any other matter included in a
requirement applicable to the device under this chapter." 21 U.S.C. § 360k; see Medtronic, 518 U.S.
at 481-82.

**United States District Court**
For the Northern District of California

1    **1.       Express Preemption**

2

3         Defendant argues that Plaintiffs' state law claims are expressly preempted under the NLEA's

4    preemption provision, 21 U.S.C. § 343-1, which bars states from either directly or indirectly

5    imposing requirements that differ from the FDA regulations.  Defendant contends that Plaintiffs seek

6    to impose additional requirements related to color additives.  Color additives, it argues, are

7    "pervasively regulated" under the FDCA.  See, e.g., 21 C.F.R. § 70.3(f), 101.22(a)(4),(c),(k).

8         Plaintiffs cite a number of cases from this district holding that the express preemption

9    provision of the NLEA does not preempt state laws on the same subject as federal laws.  See, e.g.,

10   Kosta v. Del Monte Corp., No. 12-1722, 2013 WL 2147413, at *6-7 (N.D. Cal. May 15, 2013)

11   (Gonzalez Rogers, J.) (collecting cases and noting that "the many district courts addressing this issue

12   have found that state law claims are not preempted where the food labeling requirements under state

13   law are identical to their federal FDCA and NLEA counterparts").

14        Plaintiffs contend that all of their state law claims are based on statutes that mirror the

15   FDCA, and therefore are not preempted.  It is unclear from Defendant's motion what additional

16   requirements, beyond those in the FDCA, it claims that Plaintiffs seek to impose.  As the Kosta court

17   noted, while the parties may disagree as to the meaning of the FDA requirements and whether the

18   products at issue conform to those requirements, "that disagreement does not mean that Plaintiffs are

19   trying to impose additional requirements beyond the FDA's."  Id. at *8.  To the extent that

20   Defendant argues that its yogurt products satisfy all the applicable FDA regulations, that argument is

21   beyond the scope of a motion to dismiss.

22        The Court denies the motion to dismiss as to express preemption.

23

24   **2.       Implied Preemption**

25

26        Defendant argues that the comprehensive statutory and regulatory scheme of the FDCA, as

27   amended by the NLEA, occupies the food-labeling field and therefore preempts Plaintiffs' claims,

28   because there is no private right of action under the FDCA.  Allowing Plaintiffs' state law claims to

13

United States District Court
For the Northern District of California

1   proceed, Defendant contends, would conflict with Congress's intent to preclude private enforcement

2   of the FDCA.  See Opp. at 15.

3          Defendant relies heavily on the Ninth Circuit's decision on Pom Wonderful v. Coca-Cola

4   Company, 679 F.3d 1170 (9th Cir. 2012).  In that case, the manufacturer of a pomegranate juice

5   drink sued Coca-Cola under the Lanham Act, alleging that a competing product, called

6   "Pomegranate Blueberry," was falsely advertised because it was made from 99.4% apple and grape

7   juice and contained very little pomegranate juice.  The plaintiff also brought state law claims under

8   the Sherman Law, the UCL, and the FAL.  The court held that "the FDCA and its regulations bar

9   pursuit of both the name and labeling aspects of [plaintiff's] Lanham Act claim."  679 F.3d at 1176.

10  The court noted that private litigants may not "enforce the FDCA or its regulations because allowing

11  such a suit would undermine Congress's decision to limit enforcement the FDCA to the federal

12  government" or maintain a "claim that would require a court originally to interpret ambiguous FDA

13  regulations, because rendering such an interpretation would usurp the FDA's interpretive authority."

14  Id. at 1175-76.  Defendant contends that Plaintiffs' claims implicate the same concerns.  It argues

15  that Plaintiffs are trying to bootstrap alleged violations of FDA regulations onto state-law claims

16  and asking the Court to interpret and apply FDA labeling regulations, thereby usurping the power of

17  the FDA.

18         However, most of the cases from this district discussing Pom Wonderful in the context of

19  food labeling claims have found that it does not stand for sweeping preemption of state-law claims.

20  See, e.g., Brazil v. Dole Food Company, No. 12-1831, 2013 WL 1209955, at *18 (N.D. Cal. March

21  25, 2013) (Koh, J.) (holding that Pom Wonderful was based on a potential conflict between the

22  FDCA and the Lanham Act and left open the question of preemption of state law claims); Khasin v.

23  Hershey Co., No. 12-1862, 2012 WL 5471153, at *5 (N.D. Cal. Nov. 9, 2012) (Davila, J.)

24  ("[C]ontrary to Defendant's contention, the Pom Wonderful court only held that the FDCA bars

25  causes of action brought under the federal Lanham Act where doing so would implicate the rules and

26  regulations set forth under the FDCA."); Samet v. Proctor & Gamble Co., No. 12-1891, 2013 WL

27  3124647, at *3 (N.D. Cal. June 18, 2013) (Grewal, J.);  Ivie v. Kraft Foods Global, Inc., No. 12-

28  2554, 2013 WL 685372, at *8 (N.D. Cal. Feb. 25, 2103) (Whyte, J.); Kosta v. Del Monte Corp., No.

14

1   12-1722, 2013 WL 2147413, at *6-7 (N.D. Cal. May 15, 2013) (Gonzalez Rogers, J.).

2        As Judge Gonzalez Rogers noted in Kosta v. Del Monte, while the Pom Wonderful court

3   held that section 337(a) of the FDCA effectively barred Pom Wonderful's claims under the Lanham

4   Act, it remanded the case and specifically declined to address whether the state law claims would be

5   preempted.  2013 WL 2147413, at *8, see 679 F.3d at 1178.  Therefore, as the Kosta court observed,

6   Pom Wonderful is instructive as to "the interplay between the two federal statutes, not any conflict

7   between the respective roles of the FDCA and the states' historic role in policing fraud and

8   deception in the sale of food products."  2013 WL 2147413, at *8.  The Kosta court also noted that

9   the "broad view of Pom Wonderful" urged by the defendant would bar any private litigant from

10   bringing actions predicated on violations of state labeling laws, rendering meaningless section 343-

11   1(a) of the NLEA, which allows state food labeling laws to mirror the relevant NLEA and FDCA

12   laws.  The court concluded that it "must start from a presumption against preemption.  In the

13   absence of a clear statement of Congressional intent to preempt state claims or to occupy the field of

14   food labeling, and seeing no conflict between the state and federal law, the Court declines to find

15   that the claims here are preempted."  Id. at *8-9.

16        In Brazil, Judge Koh discussed the NLEA, noting that the California Supreme Court has held

17   that there was no indication from the text of the statute or its legislative history that Congress

18   "'intended a sweeping preemption of private actions predicated on requirements contained in state

19   laws.'"  2013 WL 1209955, at *7 (quoting In re Farm Raised Salmon Cases, 42 Cal. 4th 1077, 1090

20   (2008).  In In re Farm Raised Salmon, the California Supreme Court quoted remarks from

21   Representative Henry Waxman, who introduced the NLEA in the House of Representatives: "[the

22   NLEA] recognizes the importance of the State role: by allowing States to adopt standards that are

23   identical to the Federal standard, which may be enforced in State court; by allowing the States to

24   enforce the Federal Standard in Federal court."  42 Cal. 4th at 1090.  The California Supreme Court

25   held, based in part on this comment, that "allow[ing] states to enforce the federal requirements in

26   federal court, but not discussing who would be allowed to enforce the identical state requirements . .

27   . suggest[s] that Congress did not intend to alter the status quo, i.e., states may choose to permit their

28   residents to file unfair competition or other claims based on the violation of state laws."  Id.

United States District Court
For the Northern District of California

1    The Court denies the motion to dismiss as to implied preemption.

2

3    **D.      Primary Jurisdiction**

4

5        Defendant argues that even if Plaintiffs' claims are not preempted, the Court

6    should dismiss the Complaint under the primary jurisdiction doctrine.  "The primary jurisdiction

7    doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the

8    resolution of an issue within the special competence of an administrative agency . . . and is to be

9    used only if a claim involves an issue of first impression or a particularly complicated issue

10   Congress has committed to a regulatory agency."  Clark v. Time Warner Cable, 523 F.3d 1110, 1114

11   (9th Cir. 2008).  Primary jurisdiction is a prudential abstention doctrine "under which a court

12   determines that an otherwise cognizable claim implicates technical and policy questions that should

13   be addressed in the first instance by the agency with regulatory authority over the relevant industry

14   rather than the judicial branch."  Id.

15       Courts weigh four factors in deciding whether to apply the primary jurisdiction doctrine:  "1)

16   the need to resolve an issue that 2) has been placed by Congress within the jurisdiction of an

17   administrative body having regulatory authority 3) pursuant to a statute that subjects an industry or

18   activity to a comprehensive regulatory authority that 4) requires expertise or uniformity in

19   administration."  Syntek Semiconductor Co. v. Microchip Tech., Inc., 307 F.3d 775, 781 (9th Cir.

20   2002).  If the doctrine applies, a court can either stay proceedings or dismiss the case without

21   prejudice.  See Astiana v. Hain Celestial Grp., 905 F. Supp. 2d 1013, 1015 (N.D. Cal. 2012)

22   (Hamilton, J.) (dismissing without prejudice a claim about "all natural" labeling of cosmetics under

23   the primary jurisdiction doctrine).

24       Plaintiffs allege that the FDA issued "Draft Guidance" regarding ECJ in October of 2009 and

25   sent warning letters to companies using the term, advising that its use was unlawful.  See RFN Exs.

26   1-4.  The Draft ECJ Guidance states that it "Contains Nonbinding Recommendations" and is "Not

27   for Implementation."  Draft Guidance for Industry: Ingredients Declared as Evaporated Cane Juice,

28   2009 WL 3288507 (F.D.A. Oct.2009) ("Draft ECJ Guidance").  In the introduction, the document

16

1    states that guidance documents "do not establish legally enforceable responsibilities" and "should be

2    viewed only as recommendations, unless specific regulatory or statutory requirements are cited.  The

3    use of the word should in Agency guidances means that something is suggested or recommended,

4    but not required." Id. at *1.

5              The Draft ECJ Guidance then explains its substance:

6              The intent of this draft guidance is to advise the regulated industry of FDA's view that the
              term 'evaporated cane juice' is not the common or usual name of any type of sweetener,
7              including dried cane syrup.  Because cane syrup has a standard of identity defined by
              regulation in 21 C.F.R. 168.130, the common or usual name for the solid or dried form of
8              cane syrup is "dried cane syrup."  Sweeteners derived from sugar cane syrup should not be
              listed in the ingredient declaration by names which suggest that the ingredients are juice,
9              such as 'evaporated cane juice.'  FDA considers such representations to be false and
              misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to
10             reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients
              are sugars or syrups) as required by 21 C.F.R. 102.5.

11   Id. at *2-3.  The Draft ECJ Guidance also states that since the definition of "juice" is liquid coming

12   from a fruit or vegetable, and sugar cane is not considered a "vegetable" in the sense that a consumer

13   considers eating vegetables as part of her diet, the term "evaporated cane juice" should not be

14   considered "juice" as that term is defined in the regulations.  Id. at *1.

15             Plaintiffs attach to their RFN a July 31, 2012 letter from the FDA to Bob's Red Mill Natural

16   Foods, Inc., stating that "your product lists, 'Evaporated Cane Juice' in the ingredient statement;

17   however, evaporated cane juice is not the common or usual name of any type of sweetener.  The

18   proper way to declare this ingredient can be found at [a website link to the Draft ECJ Guidance]."

19   See Plaintiffs' RFN Ex. 4 at 1.  A letter sent from the FDA to Upscale Foods Inc., on November 15,

20   2004, includes this warning: "[y]our product label declares 'organic evaporated cane juice' in the

21   ingredient list; however, the common or usual name for this ingredient is sugar."  Plaintiffs' RFN

22   Ex. 2 at 1.

23             Defendant argues that that because the FDA has regulatory authority over food labeling, and

24   the issues in the case require expertise and uniformity of administration, the Court should abstain to

25   avoid undermining the FDA's judgment.  Defendant cites Hood v. Wholesoy, which stated that

26   "where a determination of a plaintiff's claim would require a court to decide an issue committed to

27   the FDA's expertise without a clear indication of how FDA would view the issue, courts of this

28   district have repeatedly found that dismissal or stay under the primary jurisdiction doctrine is

United States District Court
For the Northern District of California

1  appropriate." <u>Hood v. Wholesoy</u>, No. 12-5550, 2013 WL 3553979, at *4-5 (N.D. Cal. July 12,

2  2013) (Gonzalez Rogers, J.); <u>see also</u> <u>Astiana v. Hain Celestial Grp.</u>, 905 F. Supp. 2d at 1016

3  (relying on <u>Pom Wonderful</u> as authority to dismiss claims under primary jurisdiction where the

4  absence of FDA guidance on "all natural" labeling for cosmetics would require the court to make

5  decisions that would risk undercutting the FDA's authority); <u>All One God Faith, Inc. v. Hain</u>

6  <u>Celestial Grp.</u>, 09-3517, 2012 WL 3257660, at *11 (N.D. Cal. Aug. 8, 2012) (Illston, J.) (holding

7  that a plaintiff's labeling challenge would "inevitably require the Court to interpret and apply federal

8  organic standards, potentially create a conflict with those standards, and would intrude upon and

9  undermine the USDA's authority to determine how organic products should be produced, handled,

10  processed and labeled."); <u>Taradejna v. General Mills, Inc.</u>, 909 F. Supp. 2d 1128 (D. Minn. 2012)

11  (noting that the current standard of identity for yogurt, the FDA's public statements, and a 2009

12  proposed rule "do not constitute a model of clarity" and holding that the FDA is in the best position

13  to resolve ambiguity, not the court).

14      Plaintiffs point out that many other courts have found that the Draft ECJ Guidance

15  establishes the applicable FDA standard for evaporated cane juice and that the Court need not

16  abstain based on primary jurisdiction.  In <u>Ivie v. Kraft Foods Global, Inc.</u>, No. 12-2554, 2013 WL

17  685372, at *8-9, *12 (N.D. Cal. Feb. 25, 2013) (Whyte, J.), the court held that the evaporated cane

18  juice claim could go forward under the "deceptive" prong of the UCL, because the Draft ECJ

19  Guidance was "relevant to the issue of whether these labels could be deceptive or misleading to a

20  reasonable consumer, and there is no risk of undermining the FDA's rulemaking expertise in

21  allowing a fact finder to make this determination."  2013 WL 685372, at *12.  The <u>Hood</u> court noted

22  that in that case, the plaintiff alleged that the use of the term "evaporated cane juice" was unlawful,

23  not just misleading, but offered no other authority to support that contention apart from the Draft

24  ECJ Guidance, which is clearly labeled "unenforceable."  2013 WL 3553979, at *5.  Plaintiffs here

25  also allege that the use of the term is unlawful, in the first cause of action.  Compl. ¶¶ 100-110.

26      Other courts in this district, in addition to the <u>Ivie</u> court, have not dismissed or stayed ECJ

27  claims based on primary jurisdiction.  In <u>Samet v. Proctor & Gamble Co.</u>, where evaporated cane

28  juice was one of several product labeling issues, Judge Grewal stated that "[t]he court is not

18

convinced that the primary jurisdiction doctrine should apply to all matters of food labeling." No. 12-1891, 2013 WL 3124647, at *7 (N.D. Cal. June 18, 2013) (Grewal, J.). As to the evaporated cane juice claim, the <u>Samet</u> court made the same argument that Defendant makes here: the FDA does not currently have a final position on this issue and is in the process of developing one, and the 2009 Draft Guidance is nonbinding and does not create any legally enforceable responsibilities. The <u>Samet</u> court held that

> [w]hile it may be true that the FDA is developing a specific regulation on this issue, there is already an FDA regulation governing the use of evaporated cane juice as an ingredient. 21 C.F.R. 168.130 requires that '[t]he common or usual name of a food' shall be used to 'identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients.' As alleged, Defendants' products contain 'sugar,' which should be cited by its 'common or usual name' under the FDA regulations. This is sufficient to proceed no matter what final guidance may be issued by the agency.

<u>Id.</u> at *8.

In <u>Werdebaugh v. Blue Diamond Growers</u>, No. 12-2724, 2013 WL 5487236, at *10-11 (N.D. Cal. Oct. 2, 2013) (Koh, J.), the court cited <u>Samet</u> in holding that the FDA's position was established by existing regulations, regardless of whether the Draft ECJ Guidance was understood as non-binding. In addition, the <u>Werdebaugh</u> court noted that the Draft ECJ Guidance and the warning letters issued by the FDA over the past nine years demonstrate that the plaintiff's claim was not a "question of first impression for which the Court lacks the benefit of the FDA's views. The FDA has articulated a position that is both internally consistent and consistent with existing regulatory requirements." 2013 WL 5487236, at *11.

In <u>Kane v. Chobani, Inc.</u>, No. 12-2425, 2013 WL 3703981, at *17 (N.D. Cal. Jul. 12, 2013) (Koh, J.), another case addressing ECJ in yogurt, the court denied the defendant's motion to dismiss ECJ claims on primary jurisdiction grounds, despite the argument, made here as well, that the 25 recent food labeling cases that include an ECJ claim invite inconsistency and confusion. The court stated that, with respect to primary jurisdiction, "[s]ignificantly, the FDA has issued guidance (albeit informal guidance) regarding whether ECJ is consistent with FDA requirement. Thus, at this stage the Court is not persuaded that the Court will be required to resolve an issue of 'first impression'

United States District Court
For the Northern District of California

1    without the benefit of the FDA's opinion."  2013 WL 3703981, at *17.[2]

2        However, the <u>Kane</u> court did grant the defendant's motion to dismiss on primary jurisdiction

3    ground with regards to the claims that the defendant's use of ECJ in its yogurt violated the Standard

4    of Identity for Yogurt, because the FDA has proposed a new Standard of Identity for Yogurt that

5    allows any "safe and suitable sweetening ingredients."  <u>Id.</u> at *18; <u>see</u> Milk and Cream Products and

6    Yogurt Products; Proposal to Revoke the Standards for Lowfat Yogurt and Nonfat Yogurt and to

7    Amend the Standard for Yogurt, 74 FR 2443-02, 2445, 2009 WL 86976 (Jan. 15, 2009).  The

8    Standard of Identity for a food is issued by the FDA and governs its composition, labeling, and

9    alternative ingredients.

10       Plaintiffs here allege that Defendant's use of "organic evaporated cane juice" on its label

11    violates the FDA's food labeling requirements as embodied in the 2009 Draft ECJ Guidance and

12    because it is "unlawful to use evaporated cane juice as an ingredient in yogurt" based on the

13    Standard of Identity for Yogurt, 21 C.F.R. 131.200.  Compl. ¶ 56. The Standard of Identity for

14    Yogurt currently sets forth approved sweeteners – "sugar (sucrose), beet or cane" – but does not

15    mention ECJ.  21 C.F.R. § 131.200(d)(2).  The FDA has proposed a new Standard of Identity for

16    Yogurt that allows any "safe and suitable sweetening ingredients."  <u>Id.</u> at *18; Milk and Cream

17    Products and Yogurt Products; Proposal to Revoke the Standards for Lowfat Yogurt and Nonfat

18    Yogurt and to Amend the Standard for Yogurt, 74 FR 2443-02, 2445, 2009 WL 86976 (Jan. 15,

19    2009).  Pending the adoption of a new Standard, the FDA has suggested that it will not enforce

20    violations of the current Standard of Identity if companies comply with the proposed standard.  <u>Id.</u> at

21    2456 ("FDA intends to consider the exercise of its enforcement discretion on a case-by-case basis

22    when yogurt products are in compliance with the standard of identity proposed in this proposed

23    rule").  Judge Koh in <u>Kane v. Chobani</u> held that "[g]iven the possibility that the FDA will soon

24

25         [2]    The Court recognizes that the <u>Hood v. Wholesoy</u> court has come to a different conclusion
on the issue of primary jurisdiction over ECJ claims.  In that case, Judge Gonzalez Rogers found that

26    the FDA's issuance of warning letters regarding the use of ECJ, despite the non-binding nature of the
Draft ECJ Guidance, showed that the "FDA's position [on ECJ] is not settled."  2013 WL 3553979, at

27    *5.  The Court acknowledges that the FDA's Draft ECJ Guidance is non-binding, but the FDA's
subsequent warning letters articulate the same stance on the use of the term "evaporated cane juice."

28    There does not appear to be inconsistency in the FDA's guidance; there has been no statement from the
FDA that the use of the term is permissible. The Court therefore follows the reasoning and conclusion
of the <u>Samet</u> and <u>Werdebaugh</u> line of cases.

1    change the Standard of Identity for Yogurt to Permit the use of ECJ and the indications that the FDA

2    will not bring claims against manufacturers who comply with the proposed revised standard of

3    identity, Plaintiffs' claims based on the Standard of Identity for Yogurt are dismissed on primary

4    jurisdiction grounds." <u>Kane v. Chobani, Inc.</u>, No. 12-2425, 2013 WL 3703981, at *17 (N.D. Cal.

5    Jul. 12, 2013) (Koh, J.). The Court agrees with the <u>Kane</u> court that to the extent any of Plaintiffs'

6    claims are based on the Standard of Identity for Yogurt, they should be dismissed. The FDA's

7    public statements regarding the Standard of Identity for Yogurt are very different from its statements

8    regarding ECJ. The FDA has specifically stated that it will treat potential violations of the Standard

9    of Identity for Yogurt on a case-by-base basis and assess whether they comport with the proposed

10   revised standard. The FDA has made no such declaration regarding ECJ; rather, the FDA's

11   guidance, in the 2009 Draft ECJ Guidance document and in numerous warning letters, has been

12   consistent that the ECJ label does not comport with regulatory requirements. <u>See, e.g.</u>, <u>Werdebaugh</u>,

13   2013 WL 5487236, at *11.

14         The Court denies the motion to dismiss on primary jurisdiction grounds, except for those

15   claims based on the Standard of Identity for Yogurt, which are dismissed without prejudice.

16

17   **E.      Plaintiffs' State Law Claims**

18

19         Defendant moves to dismiss Plaintiffs' claims under the UCL, FAL, and CLRA, arguing that

20   they are implausible and do not state a claim upon which relief can be granted. The UCL prohibits

21   any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The

22   FAL prohibits "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code §

23   17500. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

24   practices." Cal. Civ. Code § 1770. The Court will address both the deceptive and unlawful prongs

25   of the UCL.

26

27   **1.      Plausibility of Consumer Deception**

28

United States District Court
For the Northern District of California

1         Plaintiffs' false advertising claims are governed by the "reasonable consumer" test, and

2   they must show that "members of the public are likely to be deceived." Williams v. Gerber Prods.

3   Co., 552 F.3d 934, 938 (9th Cir. 2008); Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995).

4   This standard requires "that a significant portion of the general consuming public or of targeted

5   consumers, acting reasonably under the circumstances, could be misled." Lavie v. Procter &

6   Gamble Co., 105 Cal. App. 4th 496, 508 (2003). However, whether a practice is "deceptive,

7   fraudulent, or unfair" is generally a question of fact, and therefore not appropriate for resolution on

8   the pleadings. See Williams, 552 F.3d at 938-40.

9         Defendant claims that a reasonable consumer would not be deceived by the challenged

10  product labels, because consumers "do not make purchasing decisions based on, and are not fooled

11  by, the idiosyncratic issues raised by the plaintiffs, i.e., that a natural ingredient has been added for

12  color, or that the product's natural sweeteners come from milk, fruit, and cane." Motion at 8.

13  Defendant maintains that its labels affirmatively disclose all the information Plaintiff objects to: that

14  there is a natural ingredient added "for color"; that vanilla "flavor" is used; and that the products

15  contain evaporated cane juice. In essence, Defendant argues that no reasonable consumer is likely to

16  be deceived.

17        Courts in this district have typically not granted motions to dismiss on plausibility in food

18  labeling cases, particularly since the question of whether it is plausible that a consumer is likely to

19  be deceived typically raises issues of fact. In Brazil v. Dole Food Company, No. 12-1831, 2013

20  WL 1209955, at *14 (N.D. Cal. March 25, 2013) (Koh, J.), the court stated that while it "has doubts

21  about the ultimate viability of some of Brazil's claims, the Court recognizes that '[t]he plausibility

22  standard is not akin to a probability requirement." 2013 WL 1209955, at *14 (quoting Ashcroft v.

23  Iqbal, 556 U.S. 662, 678 (2009). The Brazil court also cited Judge Conti's opinion in Colluci v.

24  ZonePerfect Nutrition Co., No. 12-2907, 2012 WL 6737800, at *8 (N.D. Cal. Dec. 28, 2012) (Conti,

25  J.): "the Court is not inclined to assume the role of fact-finder in the guise of determining

26  plausibility." Id. In Kosta v. Del Monte Corp., No. 12-1722, 2013 WL 2147413, at *12 (N.D. Cal.

27  May 15, 2013) (Gonzalez Rogers, J.), the court stated that accepting the allegations in the complaint

28  as true, "it is plausible that a reasonable consumer, whose food purchases are influenced by

1  nutritional content, would rely on 'front of the package' labeling claims like 'fresh,' 'all natural,'

2  and 'a natural source of antioxidants' when selecting food products.  2013 WL 2147413, at *12.

3      Although the Court shares Judge Koh's doubts about the ultimate viability of some of

4  Plaintiffs' claims, at the motion to dismiss stage, those claims pass the plausibility standard.

6      **2.      Particularity**

8      Defendant argues that Plaintiffs have not met the stringent pleading requirements of Rule

9  9(b) for claims sounding in fraud.  Even if fraud is not a necessary element of a specific claim, Rule

10  9(b) applies where a plaintiff has alleged a unified course of fraudulent conduct and has relied on

11  that course of conduct as the basis of a claim.  See Ness v. Ciba-Geigy Corp. USA, 317 F.3d 1097,

12  1103 (9th Cir. 2003).  Plaintiffs' claims all relate to the same alleged unified fraudulent course of

13  conduct – that Defendant's labeling was fraudulent, deceptive, and misleading – and are subject to

14  the heightened pleading requirement of Rule 9(b).  See Kearns v. Ford Motor Co., 567 F.3d 1120,

15  1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards

16  apply to claims for violations of the CLRA and UCL.").  "Averments of fraud must be accompanied

17  by the who, what, when, where, and how of the misconduct charged."  Id. at 1124 (internal

18  quotations omitted).

19      Plaintiffs allege that they read the labels on Defendant's products before purchase (Compl. ¶

20  80), reasonably relied on the package labeling and based their purchasing decisions on it (Compl. ¶¶

21  80, 81, 131), and would not have bought the products or paid a premium for them if they had known

22  "the truth" (Compl. ¶¶ 87, 107). Many of the issues relevant here have been addressed above in the

23  discussions of reliance and standing.  Plaintiffs have identified "who and what":  Defendant and the

24  yogurt products they purchased.  Their allegations of "when and where" are fairly general (during

25  the four years prior to the filing of the Complaint, and in California, respectively).  In Astiana v. Ben

26  & Jerry's Homemade, Inc., Nos. 10-4387, 10-4937, 2011 WL 2111796, at *6 (N.D. Cal. May 26,

27  2011) (Hamilton, J.), the court held that an allegation of ice cream purchased "since at least 2006"

28  and "throughout the class period" was sufficient for purposes of Rule 9(b).  2011 WL 2111796, at

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

*6.  Similarly, in <u>Kane v. Chobani, Inc.</u>, No. 12-2425, 2013 WL 3703981, at *18 (N.D. Cal. Jul. 12, 2013) (Koh, J.), the court found that allegations that the two plaintiffs purchased the defendants' yogurts "approximately one year ago" and "approximately two years ago" were sufficient. 2013 WL 3703981, at *18.  "Defendant has not shown that Defendant used a term other than ECJ during the period in which Plaintiffs purchased the Yogurts.  Accordingly, the Court is not persuaded that, in this case, Plaintiffs should be required to allege with more specificity each time they went to the grocery store and purchased a cup of Defendant's Yogurt."  <u>Id.</u>

As to the question of "how," Plaintiffs have alleged that Defendant's product labels violate the FDCA and the Sherman Law by violating the Standard of Identity for Yogurt, by violating the FDA standard governing the use of the term "evaporated cane juice," and by failing to use the "common or usual name" for the sweetening ingredient in the product, in violation of 21 C.F.R. §§ 101.3 and 102.5.  The Court has already dismissed Plaintiffs' claims based on the Standard of Identity for Yogurt under the primary jurisdiction doctrine, but Plaintiffs have adequately pleaded their claims under the unlawful prong of the UCL based on Defendant's other alleged violations of the Sherman Law.

The Standard of Identity for Cane Sirup is referred to in the 2009 Draft ECJ Guidance, which states that: "[b]ecause cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane sirup.' Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as 'evaporated cane juice.'"  Draft ECJ Guidance, 2009 WL 3288507, at *2.  The Standard of Identity for Cane Sirup itself does not mention ECJ, but states that the name of the food is "Cane sirup" or "sugar cane sirup," with "syrup" an alternative spelling.  ECJ is not listed as an acceptable alternative name.  21 CFR 168.130.  Plaintiffs also allege that the use of the term "evaporated cane juice" rather than "sugar" or "syrup" violates 21 C.F.R. §§ 101.3 and 102.5, which prohibit manufacturers from referring to foods or ingredients by anything other than their common and usual names.  <u>See</u> Compl. ¶ 46, 51.  As discussed above regarding the primary jurisdiction doctrine, although the Draft ECJ Guidance does not establish legally enforceable responsibilities, the Draft ECJ Guidance and the FDA warning letters cited by

24

United States District Court
For the Northern District of California

1  Plaintiffs,"support the conclusion that Defendant has violated the FDA's common and usual name

2  regulations.  Because the Sherman Law incorporates federal standards, the FDA's statements

3  support the conclusion that the Sherman Law's requirements have been violated as well."  Kane v.

4  Chobani, 12-2425, 2013 WL 3776172, at *4 (N.D. Cal. July 15, 2013); see also Samet v. Proctor &

5  Gamble Co., No. 12-1891, 2013 WL 3124647, at *8 (N.D. Cal. June 18, 2013) (Grewal, J.) (holding,

6  an another ECJ case, that the defendants' "products contain 'sugar,' which should be cited by its

7  'common or usual name' under the FDA regulations.  This is sufficient to proceed no matter what

8  final guidance may be issued by the agency.").  Whether or not Plaintiffs can prove these

9  allegations, they are sufficient to proceed past a motion to dismiss.

10       The Court denies the motion to dismiss as to the plausibility and particularity of Plaintiffs'

11  state law claims under the UCL, FAL, and CLRA.

12

13       **F.**     **Unjust Enrichment**

14

15       Defendant argues that Plaintiffs' claim for restitution based on an "unjust

16  enrichment/quasi contract" theory must be dismissed because California does not recognize unjust

17  enrichment as a separate cause of action.  Although there is some inconsistency in the law, the

18  California Court of Appeals has held, in several recent cases, that unjust enrichment is not a separate

19  claim, but rather one for restitution.  See Brazil v. Dole Food Company, No. 12-1831, 2013 WL

20  1209955, at *18 (N.D. Cal. March 25, 2013) (Koh, J.) (collecting state court cases and discussing

21  federal courts' decisions in light of that persuasive authority).  Further, Plaintiffs do not oppose the

22  dismissal of their unjust enrichment cause of action.  See Opp. at 25.

23       The Court grants the motion to dismiss the unjust enrichment claim.

24

25  **V.**     **Conclusion**

26       The Court grants in part and denies in part the motion to dismiss.  The Court grants the

27  motion to dismiss Plaintiff's "natural" labeling claims on standing grounds, without prejudice.  The

28  Court grants the motion to dismiss without prejudice to the extent any claims are based on the

1  Standard of Identity for Yogurt, based on primary jurisdiction. The Court grants the motion to

2  dismiss Plaintiff's unjust enrichment claim with prejudice. The Court denies the motion to dismiss

3  as to all other claims.

4

5

6  **IT IS SO ORDERED.**

7

8

9

10

11  Dated: 1/14/14

12  ELIZABETH D. LAPORTE

13  United States Chief Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California